**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

|  |  |
|---|---|
| **JUVENILE 'VR'**<br>**NOW 18 YEARS OF AGE**<br><br><br>*Plaintiff,*<br><br>**Vs.**<br><br>**MUNICIPALITY OF BETHEL PARK**<br>**POLICE DEPARTMENT**<br>5100 W. Library Avenue<br>Bethel Park, PA 15102<br><br>and<br><br>**TIMOTHY O'CONNOR, Chief,**<br>**Municipality of Bethel Park Police**<br>**Department, individually and in his official**<br>**capacity**<br><br>**and**<br><br>**JOELLE DIXON, Detective, Municipality**<br>**of Bethel Park Police Department,**<br>**individually and in her official capacity,**<br><br>*Defendants.* | NO.   2:22-cv-1499<br><br>CIVIL ACTION<br><br>JURY TRIAL DEMANDED |

## **COMPLAINT**

Plaintiff, VR, now 18 years of age (Plaintiff) by and through his undersigned counsel, Kolman Law PC, hereby avers as follows:

1.   This is an action brought under 42 U.S.C. § 1983 seeking redress from all Defendants for their actions in violating Plaintiff's right to personal privacy under the Fourth and Fourteenth Amendments to the Constitution of the United States, as those amendments have been interpreted by the United States Supreme Court and the Third Circuit Court of Appeals, and for further violating Plaintiff's personal privacy as guaranteed by the laws of the Commonwealth of Pennsylvania.

2.   This action further seeks redress for Plaintiff on account of Defendant Police Chief Timothy O'Connor (hereinafter O'Connor) and Defendant Joelle Dixon's (hereinafter Dixon) having deprived Plaintiff of his right to be secure in his person from illegal search and seizure under the Fourth Amendment of the Constitution to the United States.

3.   This action further seeks monetary damages against the Municipality of Bethel Park Police Department (hereinafter Bethel Park Police Department), the employer of Defendant Connor, for failure to properly train and supervise the Department's officers in procedures regarding the confidentiality of juvenile law enforcement records.

4.   This action further seeks monetary damages against the Municipality of Bethel Park Police Department, the employer of Defendant Connor, for failure to properly train and supervise the Department's officers in procedures regarding the lawful arrest of a person whose alleged offense was committed when he was a juvenile.

5.   Pursuant to this Court's supplemental jurisdiction over a state law claim, this action further seeks monetary damages against Defendants for the unlawful disclosure of Plaintiff's juvenile law enforcement records, in violation of the Juvenile Code of the Commonwealth of Pennsylvania, 42 Pa. C.S. § 6308(a) and (b).

6.   Pursuant to this Court's supplemental jurisdiction over a state law claim, this action also seeks redress for the Defendants' breach of the common law tort of false light, with consequential damage to Plaintiff's reputation and standing at the University of Pittsburgh and in the wider community, in violation of the laws of the Commonwealth of Pennsylvania.

7.   Plaintiff seeks equitable and monetary relief for the Defendants' unlawful actions, compensation for loss of reputation, emotional pain, and suffering, punitive damages, reimbursement of costs, attorney fees, and all other relief to which he is entitled by law.

## II.  JURISDICTION AND VENUE

8.   This Court has jurisdiction over Plaintiff's federal claim under 28 U.S.C. §§ 1331 and 1343. Based on state law, the Court has supplemental jurisdiction over Plaintiff's fourth claim under 28 U.S.C. § 1367.

9.   Venue is laid correctly in the Western District of Pennsylvania pursuant to 28 U.S.C. §§ 1391. All parties reside in this District, and all actions relevant to Plaintiff's claims took place there.

## III.  PARTIES

10.   Plaintiff VR was born on August 18, 2003. He is a United States citizen and resides at 2682 Bethel Crest Drive, Bethel Park, PA, 15102.

11.   The municipality of Bethel Park is a municipality as authorized under the laws of the Commonwealth of Pennsylvania, with its principal office at 5100 W. Library Avenue, Bethel Park, PA 15102.

12.   Defendant Bethel Park Police Department is the police department for the Municipality of Bethel Park.

13. Defendant O'Connor is an adult citizen and was employed as Chief of Police by Defendant Bethel Park Police Department at all times relevant to this Complaint.

14. At all relevant times, Defendant O'Connor was a supervisory employee with the Police Department and was primarily responsible for hiring, firing, and directing employees' work activities. Defendant O'Connor is sued in his official and individual capacity.

16. Defendant Detective Joelle Dixon is an adult citizen. At all times relevant to this Complaint Defendant Dixon was employed as a detective by Defendant Bethel Park Police Department. Defendant Dixon is sued in her official and individual capacity.

## IV. FACTUAL BACKGROUND

17. At all times relevant to this Complaint, Defendants acted under the color of state law.

18. On October 21, 2021, Plaintiff was 18 years old and a first-year undergraduate student in good standing at the University of Pittsburgh, living on campus in a dormitory to which the University had assigned him.

19. On the afternoon of October 21, 2021, Plaintiff was with a friend in the privacy of his dormitory room when three University of Pittsburgh Police Department officers knocked on his door and asked if he was VR.

20. Plaintiff confirmed to the officers that he was VR.

21. Even though the officers had no warrant or any other piece of paper giving notice that Plaintiff was subject to arrest, Plaintiff was arrested, handcuffed, escorted by the officers through the dormitory hallway to an elevator, taken to a waiting University of Pittsburgh police car, placed in the back seat and, still handcuffed, driven to the University of Pittsburgh Police Department station at 3412 W. Forbes Avenue (known at the University as "Oakland Station") in Oakland, PA.

22.  The offenses for which Plaintiff was arrested were alleged to have occurred on or about May 1, 2021.

23. At the time of the alleged offenses, Plaintiff was 17 years old and thus under the protection of the Juvenile Code of the Commonwealth of Pennsylvania.

24. Plaintiff's friend and other students witnessed Plaintiff's arrest in his dormitory. The public spectacle of Plaintiff being arrested and taken away in a police car was a constructive disclosure of a juvenile arrest and criminal record, in violation of 42 Pa. C.S. 6308 (a) and (b).

25. University of Pittsburgh police officers' route to Oakland Station included Fifth Avenue, a four-lane thoroughfare through Oakland, PA, which is often populated by pedestrians.

26.  While passing along Fifth Avenue, Plaintiff saw several people he knew and made eye contact with some of them, who saw he was in the back of a police car. Plaintiff then put his head down to shield himself from further view and humiliation.

27.  At Oakland Station, Plaintiff was turned over to Defendant Dixon and another Bethel Park Police Oficer.

28.  Defendant Dixon further deprived Plaintiff of his liberty by shackling him to a chair.

29.  Plaintiff was then taken in a Bethel Park Police Department vehicle to Cove Prep Juvenile Facility in Torrance, PA, a drive of almost two hours, during which he was handcuffed.

30.  Because Plaintiff arrived after 4:00 PM that day, Plaintiff could not have a hearing until October 24. 2021.

31. Plaintiff was therefore confined against his will at the Cove Prep Facility for three nights.

32.  At a hearing on October 24, 2021, Emmanuel Oakes, a Hearing Officer appointed by the Juvinille Court, placed Plaintiff on temporary probation and released him from Cove Prep to the care of his parents.

33. Plaintiff was fitted with an ankle monitor, confined to house arrest, assigned to a probation officer, and released to his parents.

34. Hearing Officer Oakes also ordered Plaintiff to resume his studies immediately at the University of Pittsburgh.

35. Plaintiff did so the following day, on October 25, but under conditions far different from what he had previously enjoyed as a student.

36. These conditions included the requirement that rather than living on campus in a dormitory, he was to commute to and from the University of Pittsburgh from his parents' home in Bethel Park.

37. Moreover, Plaintiff was permitted to be on campus only for a class or in an "approved location" (i.e., the dining hall, library) between classes.

38. Plaintiff was also instructed by Probation Officer Melissa Whiteknight to travel to and from campus by the exact same route every day.

39. These conditions, which lasted only for the five-day period of October 25-29, were relatively benign in comparison to what happened next.

40. Plaintiff subsequently learned that on or about October 21, 2021, Defendant Dixon, acting under the supervision of Defendant O'Connor, gratuitously and unlawfully contacted the administration at the University of Pittsburgh to inform them that Plaintiff, their student, had been arrested.

41. Defendants Dixon and O'Connor disclosed detailed information about the criminal charges against Plaintiff to the University of Pittsburgh.

42.  Due to the Defendants' illegal communications, on October 29, 2021, the University sent Plaintiff a letter notifying him that he had been placed on "Interim Suspension" for an indefinite period.

43.  Plaintiff was ordered to clean out and vacate his dorm room by the following day, October 30, 2021, and was told that he no longer had access to the University's dining facilities.

44.  The letter, attached to this Complaint as Exhibit 1, further told Plaintiff that henceforth, he was officially "*Persona Non-Grata* on all University property" during the suspension period and that if he set foot on campus, he would be "subject to immediate arrest."

45. As a consequence of Dixons illegal communications with the University, Plaintiff was forbidden by the University of Pittsburgh to attend classes and had to spend the remainder of the fall semester, October 30,2021 to mid-January 2022, in his home.

46. Plaintiff was told that under terms of his house arrest, he was to remain in the house, not even go outside to the driveway, deck or yard.  In case of a compelling necessity such as a medical appointment, Plaintiff was allowed to leave the house only after his probation office had approved his absence for a specified number of hours.

47. In mid-November, Plaintiff was taken off house arrest and placed on home detention. At this time, he was allowed to go into his yard and permitted to commute to and from a job.

48. Although his ankle bracelet was removed, his probation officer tracked his moments by means of a cell phone app that allowed the officer to know Plaintiff's whereabouts 24 hours a day.

49. As a result of not being able to attend classes from October 30, 2021 to mid-January 2022, Plaintiff failed his fall semester courses and was placed on academic probation for the spring semester.

50.  At the urging of Plaintiff's new attorney and following certain representations, authorities at the University of Pittsburgh permitted Plaintiff to resume his studies in mid-January 2022.

51.  Defendants subsequently realized they had broken the law by publicly arresting Plaintiff, and by having no warrant for the arrest, as required by law.

52. Upon learning of their mistake, however, at no time did Defendants admit their error nor attempt to correct the public perception that Plaintiff had been arrested for a criminal act committed as an adult.

### COUNT 1

### Violation of Civil Rights (42 U.S.C. § 1983) under the Fourth and Fourteenth Amendments to the United States Constitution against Defendants Against Defendants Dixon and O'Connor

53.  The averments of the foregoing paragraphs are hereby incorporated by reference as if set forth fully herein.

54.  At all relevant times, the Defendants acted under the color of state law.

55.  At all relevant times, Plaintiff had a constitutionally protected interest in personal privacy, a right guaranteed to him by the Fourth and Fourteenth Amendments to the United States Constitution, as applied to the states through the Due Process Clause of the Fourteenth Amendment, and as those amendments have been interpreted by the United States Supreme Court and other federal courts within the jurisdiction of the Third Circuit Court of Appeals.

56.  Plaintiff's constitutionally protected interest in his personal privacy included all records concerning an alleged offense committed when Plaintiff was a minor.

57.  Plaintiff's juvenile records were effectively made public on October 21, 2021, when three officers of the University of Pittsburgh Police Department, acting at the unlawful request of the Bethel Park Police Department, came to Plaintiff's dormitory at the University of Pittsburgh,

arrested him without a warrant, placed him in handcuffs, and took him up an elevator and out of the dormitory to a waiting police car.

58. Plaintiff's public arrest was a flagrant violation of his constitutionally protected right to personal privacy under the Fourth and Fourteenth Amendments.

59. At all relevant times, Plaintiff's constitutionally guaranteed interest in personal privacy was further protected by provisions of the Pennsylvania Juvenile Code regarding disclosure of juvenile law enforcement records.

60. The Pennsylvania Juvenile Code states explicitly at 42 Pa. C.S. § 6308(a) that records of juvenile offenses may not be disclosed to the public, with exceptions for specific law enforcement or judicial authorities, none of which apply here.

61. The Pennsylvania Juvenile Code states explicitly at 42 Pa. C.S. § 6308(b) that records of juvenile offenses may not be disclosed to the public except under certain enumerated circumstances, none of which apply here.

62. Therefore, in addition to enjoying a right of personal privacy protected by the United States Constitution, as a Pennsylvania resident, Plaintiff also had a statutory state right of privacy under 42 Pa. C.S. § 6308.

63. The gravity of society's interest in protecting juvenile records from disclosure to the public is also reflected in the Federal Juvenile Code at 42 U.S.C. § 5038, which forbids the release of juvenile records except in certain enumerated circumstances, none of which apply here.

64. In a demonstration of Defendants' deliberate indifference to Plaintiff's constitutional rights, Defendant Dixon, acting within the authority granted to her by Defendant O'Connor and other superiors at Bethel Park Police Department, further violated Plaintiff's constitutionally

protected right to personal privacy by informing authorities at the University of Pittsburgh of the charges for which Plaintiff was arrested.

65.   Defendants' unlawful conduct has had and will continue to have severe consequences for Plaintiff's life. As a direct and proximate result of Defendants' violations herein, Plaintiff will find it substantially more challenging to advance the career of his choosing. Plaintiff has also suffered damage to his reputation; embarrassment, humiliation, and disgrace in the eyes of his fellow students and the general public; mental anguish, legal fees, court costs, and emotional distress.

**WHEREFORE**, Plaintiff requests the relief set forth below.

<u>**COUNT 2**</u>

**Violation of Civil Rights (42 U.S.C. § 1983) under the**
<u>**Fourth Amendment to the United States Constitution**</u>
<u>**Against Defendant Municipality of Bethel Park**</u>

66.  The averments of the foregoing paragraphs are hereby incorporated by reference as if set forth fully herein.

67.   At all times relevant, Defendants acted under the color of state law.

68.   At all times relevant to this action, Defendants Bethel Park Police Department, O'Connor, and Dixon knew or should have known that counsel represented Plaintiff. Defendants also knew or should have known that through his counsel, Plaintiff would voluntarily submit to a request to appear should it be necessary to take him into custody.

69.   Defendant City of Bethel Police Department further knew that the standard procedure for taking a juvenile into custody was to work with the juvenile's attorney, parents, or guardian for a voluntary appearance.

70.   The purpose of special arrest procedures for juveniles is to assure that the juvenile is taken into custody in a lawful and circumspect manner that respects the juvenile's constitutional and

statutory rights and also shields the youthful offender from the kind of public scrutiny Defendant Dixon created when she requested University of Pittsburgh police officers to arrest Plaintiff.

71.  Not withstanding the fact that Defendant Dixon should have known about legal procedures pertaining to the arrest of a juvenile, and despite the fact she should have known that Plaintiff was represented by counsel and would have appeared voluntarily for any legal proceeding, on October 21, 2021, Defendant Dixon, acting with authorization from Defendant O'Connor and other superiors at Defendant Bethel Park Police Department, ordered the unlawful arrest of Plaintiff by officers of the University of Pittsburgh Police Department.

72.  The fact that Plaintiff was arrested without a warrant is in plain violation of the Fourth Amendment's explicit command that a person may not be seized without a warrant for the person's arrest.

73.  The Fourth Amendment further states that "no warrant shall issue, but upon probable cause, supported by Oath or affirmation."  No such oath or affirmation existed to authorize Plaintiff's arrest.

74.  Defendant Dixon's request to the University of Pittsburgh Police Department that officers arrest Plaintiff, an unnecessary act executed in the absence of an arrest warrant, showed reckless disregard for Plaintiff's right to be free from an unreasonable search and seizure, as guaranteed to him by the Fourth Amendment to the United States Constitution.

75.  As a result of Defendant Dixon's reckless disregard for Plaintiff's constitutional rights as a citizen, and his state statutory rights as a juvenile, Plaintiff was confined away from his home and against his will for three nights at the Cove Prep Juvenile Facility in Torrance, PA.

76.  Defendants' unlawful conduct has seriously affected the plaintiff's life. As a direct and proximate result of Defendants' violation of Plaintiff's right to be free of an unreasonable search

and seizure of his person, Plaintiff will find it substantially more difficult to advance the career of his choosing. Plaintiff has also suffered damage to his reputation; embarrassment, humiliation, and disgrace in the eyes of his fellow students and the general public; mental anguish, emotional distress, and discomfort, all as a direct and proximate result of Defendants' reckless actions in effectively disclosing his juvenile law enforcement records by publicly arresting him.

77. In addition, Plaintiff has been obliged to incur expenses for attorney fees, court costs, mental health therapy, and other matters.

**WHEREFORE**, Plaintiff requests the relief set forth below.

## COUNT 3

### Violation of Civil Rights (42 U.S.C. § 1983) by all Defendants under the Fourth and Fourteenth Amendments to the United States Constitution
### Against all Defendants

78. The averments of the foregoing paragraphs are hereby incorporated by reference as if set forth fully herein.

79. At all times relevant to this Complaint, Defendants acted under the color of state law.

80. At all times relevant to this Complaint, Defendants O'Connor and Dixon were employees and agents of Defendant Bethel Park Police Department. They acted at all times in their employment with the police department and their individual capacities.

81. One of the legislative purposes enumerated in the introductory text of the Pennsylvania Juvenile Act of 1978 is to "provide means through which the provisions of this chapter are executed and enforced and in which the parties are assured a fair hearing and their constitutional and other legal rights recognized and enforced." 42 Pa. C.S. 6301(b)(4). The legislative intent of 42 Pa. C.S. 6301(b)(4) is reflected in the Pa. Rules of Juvenile Court Procedure, which state that

the court's rules "shall be interpreted and construed to effectuate the purposes stated in the Juvenile Act, 42 Pa. C.S. § 6301(b)." P.R.J.C.P. 101(C).

## A. Wrongful disclosure of Plaintiff's juvenile law enforcement records

82. On the afternoon of October 21, 2021, pursuant to a directive from Defendant Dixon, who was acting under the supervision of Defendant O'Connor and other superiors in the Bethel Park Police Department, three officers from the University of Pittsburgh Police Department arrested Plaintiff at his dormitory on the University of Pittsburgh campus.

83. The Rules of Juvenile Court Procedure regard the release of juvenile law enforcement records to the public as a serious breach of juvenile court procedure. The rules state that "[u]n authorized dissemination of any information contained in the official court record to a person, agency, or department not permitted to inspect or copy the record pursuant to this rule *may result in a finding of contempt of court*." P.R.J.C.P. 160(C) (emphasis added).

84. By bringing about the public and forcible arrest of Plaintiff at his dormitory, Defendant Dixon, acting under the supervision of Defendant O'Connor and other superiors at the Bethel Park Police Department, effectively disclosed Plaintiff's juvenile law enforcement record for an alleged offense committed when he was a juvenile.

## B. Unlawful notification to the University of Pittsburgh of Plaintiff's arrest and criminal charges

85. The Rules of Juvenile Court Procedure set out the conditions under which the juvenile's school shall be notified of the juvenile's offense. The rules are clear, however, that the juvenile's school may be notified (a) only after the juvenile has been adjudicated a delinquent and (b) only by the juvenile probation office. P.R.J.C.P. 163(A).

86. Defendant Dixon, acting under the order of Defendant O'Connor and other superiors at the Bethel Park Police Department, violated the dictates of P.R.J.C.P. 163(A) and, in doing so, violated Plaintiff's constitutional right to personal privacy under the Fourth and Fourteenth Amendments to the United States Constitution.

87. In flagrant disregard of P.R.J.C.P. 163(A), within hours of Plaintiff's arrest on October 21, 2021, and weeks in advance of any court scheduling to adjudicate Plaintiff's alleged offenses, Defendant Dixon took it upon herself to contact the University of Pittsburgh and notify authorities thereof Plaintiff's arrest and criminal charges.

88. In so contacting the University, Defendant Dixon explicitly violated P.R.J.C.P. 160(C) as well as 42 Pa. 6308(a) and (b), both of which prohibit the disclosure of juvenile law enforcement records to unauthorized persons.

89. Defendant Dixon further violated P.R.J.C.P. 163(A) by usurping the authority of the juvenile probation office, the only entity authorized under the rule to notify the juvenile's school.

90. P.R.J.C.P. 163(b)(1)(c) explicitly states that information released to the juvenile's school "may not be used for school disciplinary purposes" except in three enumerated circumstances, none of which apply here.

91. When Defendant Dixon contacted authorities at the University of Pittsburgh to inform them of Plaintiff's arrest and criminal charges, she was legally obliged to notify them that the information she provided could not be used for disciplinary purposes.

92. Defendant Dixon failed to do so, and the University unlawfully used the information to suspend and remove Plaintiff from campus.

93. In addition to violating 42 Pa. C.S. 6308(a) and (b) and the aforementioned sections of the Pennsylvania Rules of Juvenile Court Procedure, the actions by Defendant Dixon directly resulted

in the violation of Plaintiff's right to personal privacy under the Fourth and Fourteenth Amendments to the United States Constitution.

### C. Wrongful arrest of Plaintiff without a warrant supported by probable cause

94.     The Fourth Amendment to the United States Constitution forbids the search and seizure of a person without a warrant supported by probable cause.

95.     When Plaintiff was arrested on October 21, 2021, he was detained, physically restrained in handcuffs, deprived of his liberty, and taken in a university police car to the headquarters of the University of Pittsburgh Police Department in Oakland, PA ("Oakland Station").

96.     At Oakland Station, Plaintiff was handed over to Defendant Dixon and another Bethel Park Police Department officer.

97.     While at Oakland Station, Plaintiff was further restrained and deprived of his liberty when Defendant Dixon ordered that Plaintiff, who was still handcuffed, be shackled to a chair.

98.     Plaintiff, still handcuffed, was subsequently taken in a Bethel Park Police Department vehicle to Cove Prep Juvenile Facility in Torrance, PA, a journey of almost two hours.

99.     Because a judge was not immediately available to conduct a hearing for Plaintiff, he was involuntarily confined for three nights at Cove Prep.

100.     From the moment of his arrest on October 21, 2021, pursuant to Defendant Dixon's directive and continuing until he was released to his parents on October 24, 2021, Plaintiff was deprived of his liberty and unable to move about of his free will.

101.     Despite having been deprived of his liberty by Defendants Dixon and the Bethel Park Police Department, at no point, either at the time of his arrest on October 21, 2021, or at any subsequent time, was Plaintiff given a copy of an arrest warrant, or any warrant of any kind.

102.    The Rules of Juvenile Court Procedure prohibit the arrest of a juvenile without a warrant supported by probable cause. Nevertheless, Defendant Dixon, acting under the supervision of Defendant O'Connor and other superiors at the Bethel Park Police Department, ordered University of Pittsburgh police officers to arrest Plaintiff without a warrant.

103.    The Rules of Juvenile Court Procedure explicitly outline the procedures law enforcement officers must follow when seeking an arrest warrant, executing the warrant, and notifying appropriate law enforcement authorities that the arrest has been executed.

104.    The court rules state, in relevant part, that "[a]n application for an arrest warrant shall be made by submitting a written allegation supported by a probable cause affidavit with the presiding judge or any issuing authority…." P.R.J.C.P. 210(A).

105.    The rules further provide that no arrest warrant "shall be issued but upon probable cause, supported by one or more affidavits sworn to before the issuing authority." P.R.J.C.P. 211(A). Evidence stated in the affidavit to support probable cause must be "reduced to writing and sworn to." P.R.J.C.P, Comment to Rule 211(A).

106.    Defendant Dixon failed to obtain a warrant for Plaintiff's arrest and further failed to make any showing of probable cause, at any time to any court, for Plaintiff's arrest. Neither Defendant Dixon, Defendant O'Connor, nor any officer at the Bethel Park Police Department made any effort to obtain a proper arrest warrant that conformed to the requirements of P.R.J.C.P 210 and 211.

107.    Instead of an arrest warrant, on or about October 25, 2021, Plaintiff's parents received by mail a single piece of paper ('paper') on the letterhead of Administrative Judge Kim D. Eaton and Chief Administrator Russell Carlino, 5th Judicial District, Family Division – Juvenile Section.

108.    The paper, dated October 21, 2021, set forth the counts with which Plaintiff had been charged and stated, "An Intake Officer will contact you to discuss this matter further." – nothing

more. The paper was not signed by any person. It did not mention the word "arrest" and in no way authorized an arrest.

109.    The warrantless arrest of Plaintiff was an explicit violation of P.R.J.C.P. 210 and 211. In depriving Plaintiff of his liberty without probable cause, Defendant Dixon, under the supervision of Defendant O'Connor and other superiors at the Bethel Park Police Department, further committed a textbook violation of the Fourth Amendment to the United States Constitution's command that no person shall be subject to search and seizure except upon a warrant supported by probable cause.

### D. Failure of Defendants O'Connor and Bethel Park Police Department to properly train and supervise its employees

110.    By ordering the public and forcible arrest of Plaintiff on October 21, 2021, Defendant Dixon effectively disclosed Plaintiff's juvenile law enforcement records to the public.

111.    On or about October 21, 2021, Defendant Dixon, acting under the supervision of Defendant O'Connor and other superiors at the Bethel Park Police Department, compounded the violation of Plaintiff's state law right to the confidentiality of his juvenile law enforcement records by gratuitously contacting authorities at the University of Pittsburgh to inform them that Plaintiff, their student, had been arrested on sexual assault charges. Defendant Dixon's action in contacting the University was the direct cause of Plaintiff's studies at the University being interrupted and was in express violation of the Pennsylvania Juvenile Code, 42 Pa. C.S. € 6308(a) and (b), and P.R.J.C.P. 160(C).

112.    Defendant Dixon's illegal conduct in effectively disclosing Plaintiff's juvenile law enforcement records to the public by having him arrested, and her communication of Plaintiff's arrest to the University of Pittsburgh, all in violation of the laws of the Commonwealth of

Pennsylvania, were a direct result of Defendants O'Connor and Bethel Park Police Department's failure to train and supervise their employees about laws protecting the confidentiality of juvenile law enforcement records.

113.    The requirements that must be satisfied for juvenile arrest are set out in P.R.J.C.P. 210 and 211. One such requirement is that before the authorizing official may issue an arrest warrant, the officer requesting the warrant must affirm, in writing and sworn to by the officer, that probable cause exists to arrest the subject of the warrant.

114.    Defendant Dixon ordered Plaintiff's arrest even though Plaintiff was a juvenile at the time of the alleged offense and no warrant had been issued authorizing the search and seizure of Plaintiff's person, in violation of P.R.J.C.P. 210 and 211.

115.    Defendants O'Connor and Bethel Park Police Department knowingly, recklessly, and/or with willful indifference to their legal obligations failed to instruct their employees in the requirements of P.R.J.C.P. 210 and 221.

116.    As a direct and proximate result of the failure by Defendants O'Connor and the Bethel Park Police Department to properly train and supervise its employees in juvenile arrest procedures, Defendant Dixon irresponsibly ordered the warrantless arrest of Plaintiff.

117.    The unlawful arrest of Plaintiff ordered by Defendant Dixon violated Plaintiff's right under the Fourth Amendment to the United States Constitution to be free from an unreasonable search and seizure of his person without a judicially issued warrant supported by probable cause.

118.    Plaintiff has been seriously injured by the failure of Defendants O'Connor and the Bethel Park Police Department to train and supervise their employees in the constitutional rights of United States citizens and the statutory rights of juveniles under the Pennsylvania Juvenile Code and Rules of Juvenile Court Procedure.

119.    Because of his unlawful arrest, Plaintiff will find it substantially more difficult to advance the career of his choosing. Plaintiff has also suffered damage to his reputation; embarrassment, humiliation, and disgrace in the eyes of his fellow students and the general public; mental anguish, emotional distress, and discomfort, all as a direct and proximate result of the failure by Defendant O'Connor and other officers at Bethel Park Police Department to properly train and supervise their employees.

120.    In addition, Plaintiff has been obliged to to incur expenses for attorney fees, court costs, mental health therapy and other matters.

    **WHEREFORE**, Plaintiff requests the relief set forth below.

**COUNT 4**
**Tort of False Light**
**Against All Defendants**

121.    The averments of the foregoing paragraphs are hereby incorporated by reference as if set forth fully herein.

122.    Plaintiff's arrest on October 21, 2021, executed at the direction of Defendant Dixon under the supervision of Defendant O'Connor and other superiors at the Bethel Park Police Department, not only violated Plaintiff's constitutional rights but flaunted the laws of Pennsylvania against casting persons in a false light.

123.    In carrying out Plaintiff's arrest at the University of Pittsburgh at a busy time of day on campus and in plain view of Plaintiff's friend and other students in the dormitory, Defendants recklessly conveyed an impression that would lead a reasonable person to conclude that there was probable cause to arrest Plaintiff, that he had committed a crime as an adult, and that perhaps he was a fugitive from the law for a serious offense.

124.    By ordering the public and forcible arrest of Plaintiff on a busy day at the University

campus, Defendant Dixon created the false impression that Plaintiff was a criminal and his offense so serious that the University police deemed it necessary to dispatch no fewer than three officers to come to Plaintiff's dormitory and take Plaintiff into custody.

125.    By having Plaintiff publicly arrested, Defendants acted in reckless disregard of the truth and cast Plaintiff in the false light of a criminal.

126.    Contrary to the image created by Plaintiff's arrest, the truth was that Plaintiff's alleged offense had been committed when he was a juvenile, that he would have voluntarily turned himself into authorities if they had wanted to take him into custody, and that he was not a criminal on the run from the law.

127.    As a direct and proximate result of Defendant Dixon's having ordered his arrest, Plaintiff was cast in a false light that embarrassed and humiliated him and caused irreparable damage to his reputation and standing in the community.

128.    By casting Plaintiff in a false light, Defendants showed deliberate indifference to Plaintiff's rights under the United States Constitution and his statutory and common law rights under Pennsylvania law.

129.    As a direct and proximate cause of Defendants' casting Plaintiff in a false light, Plaintiff sustained and continues to suffer from depression, anxiety, and emotional distress.

130.    Defendants' conduct in casting Plaintiff in a false light was reckless, willful, malicious, and so extreme and outrageous to warrant the imposition of punitive damages.

131.    In addition to the above-mentioned injuries, Plaintiff has been obliged to incur expenses for attorney fees, court costs, mental health therapy, and other matters.

   **WHEREFORE**, Plaintiff requests the relief set forth below.

### **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays that the Court enter judgment in his favor against Defendants as follows:

1.      Defendants are to compensate Plaintiff in the amount determined by the trier of fact for actual and special damages.

2.      Plaintiff is to be awarded out-of-pocket expenses due to Defendants having cast him a false light, causing injury to his reputation at the University of Pittsburgh and in the wider community.

3.      Plaintiff is to be awarded out-of-pocket expenses for the emotional distress intentionally inflicted on him by Defendants.

4.      Plaintiff is to be awarded liquidated and/or punitive damages as permitted by applicable law, in an amount set forth by statute and/or believed by the Court or trier of fact to be appropriate to punish Defendants for their unlawful and reckless conduct.

5.      Plaintiff is to be afforded any, and all other equitable and legal relief as the Court deems just, proper, and appropriate.

6.      Plaintiff is to be awarded the costs and expenses of this action and reasonable legal fees as provided by applicable state law.

7.      The Court is to maintain jurisdiction of this action after the verdict to ensure compliance with its Orders therein.


Respectfully Submitted,

**KOLMAN LAW, P.C.**
 /s/ Timothy M. Kolman
Timothy M. Kolman, Esquire
414 Hulmeville Ave
Penndel, PA 19047
(215) 750-3134
*Attorneys for Plaintiff*

Dated : October 25, 2022