IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JUVENILE "VR" ) | CIVIL ACTION |
| NOW 18 YEARS OF AGE, ) | |
| ) | No: 2:22-cv-1499 |
| Plaintiff, ) | |
| v. ) | District Judge W. Scott Hardy |
| ) | |
| MUNICIPALITY OF BETHEL PARK POLICE ) | |
| DEPARTMENT ) | *ELECTRONICALLY FILED* |
| 5100 W. Library Avenue ) | |
| Bethel Park, PA  15102 ) | |
| ) | |
| and ) | **JURY TRIAL DEMANDED** |
| ) | |
| TIMOTHY O'CONNOR, Chief, ) | |
| Municipality of Bethel Park Police ) | |
| Department, individually and in his official ) | |
| capacity, ) | |
| ) | |
| and ) | |
| ) | |
| JOELLE DIXON, Detective, Municipality of Bethel ) | |
| Park Police Department, ) | |
| Individually and in her official capacity, ) | |
| ) | |
| Defendants. ) | |

**DEFENDANTS' BRIEF IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S COMPLAINT FOR FAILURE TO STATE A CLAIM**

    I.       **FACTUAL AND PROCEDURAL BACKGROUND**

On October 25, 2022, Plaintiff, Juvenile "VR", filed a Complaint in the United States District Court for the Western District of Pennsylvania, asserting the following claims against the various Defendants: Fourth and Fourteenth Amendment §1983 violations regarding an alleged constitutionally protected Right to Personal Privacy (Count I against Defendants Dixon and O'Connor), Fourth Amendment §1983 violation regarding Plaintiff's alleged unlawful arrest

(Count II against Defendant Municipality of Bethel Park), Fourth and Fourteenth Amendment §1983 violations wholly duplicative of the first two Counts (Count II against all Defendants), and state law tort of False Light (Count IV against all Defendants). See, ECF Doc. 1.

The events which form the basis of Plaintiff's Complaint occurred on October 21, 2021, when three University of Pittsburgh Police Department officers arrived at Plaintiff's dormitory and took him into custody. See, ECF Doc. 1 at ¶¶18-21. At the time of the offense Plaintiff was 17 years old. *Id*. at ¶23. Plaintiff further alleges that during his arrest, he was escorted through his dormitory with his arrest being made into a "public spectacle". *Id*. at ¶¶24-26. Thereafter, Plaintiff alleges that Defendants Dixon and O'Connor unlawfully contacted the administration at the University of Pittsburgh to inform them that Plaintiff had been arrested, leading to an indefinite suspension. *Id*. at ¶¶40-45.

Plaintiff's claims can be summarized as follows; the even though he was an adult at the time of his arrest, he is entitled to the "right" of privacy provided for as a juvenile offender. He claims that the alleged violation of privacy under state law creates a federal Constitutional deprivation.

**II.     STANDARD OF REVIEW**

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b) (6) challenges the legal sufficiency of the Complaint. *Kost v. Dozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). While all well-pleaded facts, as distinguished from conclusory allegations, should be taken as true, "a Court need not credit a complaint's bald assertions or 'legal conclusions' when deciding a Motion to Dismiss." *Morse v. Lower Merion School Dist.*, 132 F.3d 902, 906 (3d Cir. 1997). The Court

is "not required to accept legal conclusions either alleged or inferred from the pleaded facts." *Kost*, 1 F.3d at 183. Furthermore, the Court is not bound "to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allian*, 478 U.S. 265, 286 (1986).

In *Phillips v. County of Allegheny*, 515 F.3d 224 (3d Cir. 2008), the Third Circuit addressed how the standard for motions to dismiss under Federal Rule of Civil Procedure 12(b)(6) has been affected by the Supreme Court's recent decision in *Bell Atlantic v. Twombly*, 515 F.3d at 230-35. The following rules are gleaned from the lengthy discussion in *Phillips*: The rule remains that Rule 8 "requires only a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the ... claim is and the grounds upon which it rests, and that this standard does not require detailed factual allegations." *Phillips*, 515 F.3d at 231 (internal quotations and citations omitted). Furthermore, "the facts alleged must be taken as true and a complaint may not be dismissed merely because it appears unlikely that the plaintiff can prove those facts or will ultimately prevail on the merits." *Id*. (citations omitted).

Two new concepts are taken from *Twombly*: First, "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's [Rule 8] obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 127 S.Ct. at 1964-65 (alteration in original) (internal citations omitted). That is, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id*. at 1965 & n. 3; *See, Phillips*, 515 F.3d at 231. Second, the Supreme Court disavowed certain language previously used, which required district courts to ensure that the plaintiff could allege

"no set of facts" to maintain a claim. *See*, *Twombly*, 127 S. Ct. at 1968-69 ("[t]his phrase is best forgotten as an incomplete, negative gloss on an accepted pleading standard: once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint."); *Phillips*, 515 F.3d at 231.

Based on *Twombly* and a related decision, the Third Circuit "understand[s] the Court to instruct that a situation may arise where, at some point, the factual detail in a complaint is so undeveloped that it does not provide a defendant the type of notice of claim which is contemplated by Rule 8." *Phillips*, 515 F.3d at 232. "Put another way, in light of *Twombly*, Rule 8(a)(2) requires a 'showing' rather than a blanket assertion of an entitlement to relief." *Id*.

Furthermore, the standard announced in *Twombly* requires that a plaintiff alleges facts so as to show his claim as "plausible." *See*, *Phillips*, 515 F.3d at 234 ("The Court explained that a plaintiff must 'nudge [his or her] claims across the line from conceivable to plausible' in order to survive a motion to dismiss." (*citing Twombly*, 127 S.Ct. at 1974)).

In evaluating whether Plaintiffs met their pleading burden in order to survive a motion to dismiss, the Court should conduct a two part analysis. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-211 (3d Cir. Pa. 2009). First, the Court must separate the factual allegations and the legal allegations contained in the complaint. The Court "must accept all of the complaints well-pleaded facts as true, but may disregard any legal conclusions." *Id*. Second, the Court "must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a plausible claim for relief.'" *Id*. at 211 (*citing Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)). If the well-plead facts only permit the Court to infer the "mere possibility of misconduct, [then] the complaint has alleged—but has not 'show[n]'—'that the pleader is entitled to relief." *Iqbal*, 556

U.S. at 679 (citing Fed.R.Civ.P. 8(a)(2)).  When a complaint has not shown the existence of a plausible claim, Plaintiffs are not entitled to relief and the claim must be dismissed.  *Id*. at 678-670.

In considering a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6), "a court may look beyond the complaint to matters of public record, including court files and records, decisions of government agencies and administrative bodies, and documents referenced in the complaint or which are essential to plaintiff' claim and are attached to either the Complaint or the defendant's Motion."  *McGarrey v. Mrs. Marquart*, 2010 U.S. Dist. LEXIS 2183 (W.D.Pa. 2010); *see also*, *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1385 n.2 (3rd Cir. 1994) (noting that court may consider matters of public record, orders, exhibits attached to the complaint and items that appear in the record of the case).

### III.    ARGUMENT

#### A.    Plaintiff's Complaint is a collateral attack on his state court adjudication.

Plaintiff alleges that his arrest was not supported by a warrant supported by probable cause.  *See*  ECF Doc. 1 at "§C. Wrongful arrest of Plaintiff without a warrant supported by probable cause" and ¶¶ 94-109.  This claim is troubling because it is a misrepresentation of facts which must be known by Plaintiff counsel as he served as the defense attorney for Plaintiff during the juvenile court proceedings.  Attached to the Motion to Dismiss is the affidavit of Detective Dixon.  Her affidavit was necessary because Plaintiff, despite being an adult, has hidden his identity by identifying himself as "Juvenile "VR" … ".  Therefore, the affidavit is necessary in order to authenticate a document entitled "Adjudicatory/Dispositional Hearing Order" (hereafter

"Order"), wherein the detective affirmed that this document was prepared by the juvenile court to memorialize the adjudication of the criminal charges pending against Plaintiff (appropriately redacted).

In ruling on the within Motion to Dismiss it is permissible for this Court to consider documents outside the pleadings as follows:

> Courts have defined a public record, for purposes of what properly may be considered on a motion to dismiss, **to include criminal case dispositions such as convictions or mistrials**, see Collins v. County of Kendall, Ill., 807 F.2d 95, 99 n. 6 (7th Cir.1986), cert. denied, 483 U.S. 1005, 107 S.Ct. 3228, 97 L.Ed.2d 734 (1987), letter decisions of government agencies, see Phillips v. Bureau of Prisons, 591 F.2d 966, 968 (D.C.Cir.1979), and published reports of administrative bodies, see Mack v. South Bay Beer Distrib., 798 F.2d 1279, 1282 (9th Cir.1986).

*Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1197 (3d Cir. 1993)(emphasis added).

At the outset the Order evidences that Plaintiff was represented by Mr. Kolman.

In pertinent part the Order further sets forth that:

> The juvenile has tendered an admission to some or all of the delinquent acts alleged in the Petition … the admission is knowingly, intelligently and voluntarily made, and conforms to the requirement of the Pa. R.J.C.P. §407; therefore, the admission is accepted by this Court.

*See* Exhibit A-1.

The Order further directs that "The juvenile [Plaintiff] is in need of treatment, supervision or rehabilitation." *Id.* Plaintiff was therefore "ADJUDICATED DELINQUENT" and placed on probation. *Id.*

It is a long held precedent that an unfavorable outcome in a state criminal prosecution cannot be collaterally attacked in a federal civil suit.

> One element that must be alleged and proved in a malicious prosecution action is termination of the prior criminal proceeding in favor of the accused. Prosser and Keeton, supra, at 874; *Carpenter v. Nutter*, 127 Cal. 61, 59 P. 301 (1899).
>
> This requirement "avoids parallel litigation over the issues of probable cause and guilt ... and it precludes the possibility of the claimant [sic] succeeding in the tort action after having been convicted in the underlying criminal prosecution, in contravention of a strong judicial policy against the creation of two conflicting resolutions arising out of the same or identical transaction." 8 S. Speiser, C. Krause, & A. Gans, American Law of Torts § 28:5, p. 24 (1991). Furthermore, "to permit a convicted criminal defendant to proceed with a malicious prosecution claim would permit a collateral attack on the conviction through the vehicle of a civil suit." *Ibid*.4 This Court has long expressed similar concerns for finality and consistency and has generally declined to expand opportunities for collateral attack, see *Parke v. Raley*, 506 U.S. 20, 29–30, 113 S.Ct. 517, 523, 121 L.Ed.2d 391 (1992); *Teague v. Lane*, 489 U.S. 288, 308, 109 S.Ct. 1060, 1073–1074, 103 L.Ed.2d 334 (1989); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923); *Voorhees v. Jackson*, 10 Pet. 449, 472–473, 9 L.Ed. 490 (1836). We think the hoary principle that civil tort actions are not appropriate vehicles for challenging the validity of outstanding criminal judgments applies to § 1983 damages actions that necessarily require the plaintiff to prove the unlawfulness of his conviction or confinement, just as it has always applied to actions for malicious prosecution.

*Heck v. Humphrey*, 512 U.S. 477, 484–86, 114 S. Ct. 2364, 2371–72, 129 L. Ed. 2d 383 (1994).

The Complaint paints an overarching picture that the defendants unlawfully charged Plaintiff and in doing so, violated some mythical Constitutional right to privacy in the manner in which he was taken into custody and secured in a juvenile detention facility. The Order, which this Court may consider as part of the consideration of Defendants' Motion to Dismiss, makes clear that there was a proceeding in juvenile court that resulted in a guilty plea for the sexual assault of a child that resulted in a sentence of probation with conditions. It is in this light that

this Court should consider Defendants' arguments and not the false light as presented in the Complaint.

### B. Counts I through III of Plaintiff's Complaint fail to allege evidence of a Constitutional violation by any of the Defendants as to his right to privacy.

Count I of Plaintiff's Complaint asserts claims against Defendants Dixon and O'Connor, alleging violations of the 4th and 14th Amendments of the U.S. Constitution. This Count focuses primarily on Plaintiff's "constitutionally protected interest in his personal privacy" concerning an offense committed when he was a minor. See, ECF Doc. 1, at ¶55. Count II alleges a 42 U.S.C. §1983 violation under the 4th Amendment of the U.S. Constitution, against Defendant Municipality of Bethel Park, focusing on the allegation that Plaintiff was arrested without a warrant. *Id*. at ¶72. Count III is then duplicative, alleging the same 42 U.S.C. §1983 violations under the 4th and 14th Amendments of the U.S. Constitution against all Defendants. Within Count III is a recitation of pleadings more appropriate for a factual background, repeating the same allegations found in Counts I and II: (i) wrongful disclosure of Plaintiff's juvenile law enforcement records; (ii) unlawful notification to the University of Pittsburgh of Plaintiff's arrest and criminal charges; (iii) wrongful arrest of Plaintiff without a warrant supported by probable cause; and (iv) failure of Defendants O'Connor and Bethel Park Police Department to properly train and supervise its employees.

> i. The 42 U.S.C. §1983 claims within Counts I through III of Plaintiff's Complaint should be dismissed, with prejudice, on the basis of qualified immunity.

In addition to Defendants' contention that Count III should be struck as duplicative of Counts I and II, the first three Counts fail to allege evidence of a Constitutional violation by any of the Defendants as to Plaintiff's right to privacy.

*O'Neill v. Kerrigan* 2013 WL 654409 (E.D. Pa. 2013) is instructive as to how these Counts fail as a matter of law. In *O'Neill*, juvenile Plaintiff was arrested at school pursuant to a juvenile arrest warrant charging him with possession and delivery of marijuana off school grounds. The charges against the juvenile were ultimately resolved in a consent decree which established a six-month period of probation. Plaintiff then brought an action pursuant to 42 U.S.C. § 1983 against the arresting officers and police department, alleging privacy protections to which he was entitled as a juvenile, and in violation of his 4th, 9th, and 14th Amendment rights. Defendants filed a Rule 12 motion based upon the argument that no constitutional rights of Plaintiff were clearly established at the time of his arrest. Defendants' motion was ultimately granted as to the §1983 claims on the basis of qualified immunity.

The *O'Neill* Court assumed, for purposes of the Rule 12 motion, that Defendants' disclosure of the charges against Plaintiff violated at least 42 Pa. Const.Stat. Ann. §6308, which is also plead by Plaintiff in the instant matter (see, ECF Doc. 1, ¶¶60-62). In *O'Neill*, Defendants argued that common sense dictates that police officers must be able to provide school officials with some "basic information as to the circumstances of the incident which led to the arrest" so as to be able to justify their presence on school grounds. *O'Neill v. Kerrigan,* 2013 WL 654409 at *3 (E.D. Pa. 2013).

Although not addressed in *O'Neill*, the Second Circuit Court of Appeals has held a lawfully arrested suspect may, in some circumstances, have a Fourth Amendment unreasonable

seizure claim where the arrestee was subjected to a "perp walk," in which the suspected perpetrator of a crime, after being arrested, is 'walked' in front of the press so that he can be photographed or filmed." *Lauro v. Charles*, 219 F.3d 202, 203 (2d Cir.2000). However, *O'Neill* found that the Plaintiff's arrest was distinguishable from the kind of "perp walk" that has been held to violate the Fourth Amendment. Compare *Lauro*, 219 F.3d at 203–04, 211–13 (holding a staged perp walk, which occurred two hours after the suspect had been arrested and brought to the police station and involved taking the suspect outside the station, "at the request of the press, for no reason other than to allow him to be photographed," and which thus "lacked any legitimate law enforcement purpose," violated the Fourth Amendment), with *Caldarola v. Cnty. of Westchester*, 343 F.3d 570, 572, 575–77 (2d Cir.2003) (holding an unstaged perp walk, in which County officials videotaped employees arrested for submitting fraudulent disability claims while employees were escorted from the County building in which they were arrested to cars in which they were taken to the police station for booking, did not violate the Fourth Amendment where County "possessed a 'legitimate law enforcement justification for transporting' [arrested employees] ... to the police station" (quoting *Lauro*, 219 F.3d at 213)).

Similar to the instant matter, in *O'Neill*, Plaintiff alleges his "friend and other students witnessed Plaintiff's arrest in his dormitory. The public spectacle of Plaintiff being arrested and taken away in a police car was a constructive disclosure of a juvenile arrest and criminal record." ECF, Doc. 1 at ¶24. The *O'Neill* Court reasoned that this scenario differs from the perp walks addressed in both *Lauro* and *Caldarola* in that it involved no media attention or publicity to a broader audience than those present at the site of the arrest.

Moreover, while Plaintiff argues that Defendants' decision to orchestrate the arrest on school grounds was unnecessary and reflects poor judgment, the arrest cannot be said to have served no legitimate law enforcement purpose. See *Virginia v. Moore*, 553 U.S. 164 (2008) (holding a State has an interest in arresting a person for a minor offense, even when it has a policy against arrests for such offenses, "because arrest will still ensure a suspect's appearance at trial, prevent him from continuing his offense, and enable officers to investigate the incident more thoroughly"); *Caldarola v. County of Westchester*, 343 F.3d 570, 576 (2d Cir.2003) (noting County "possessed a 'legitimate law enforcement justification for transporting" arrestee from site of arrest to the police station). Significantly, the *O'Neill* Court did not identify, and noted that it could not find, any case holding that arresting a juvenile pursuant to a warrant on school grounds, in view of the school community, violates the Fourth Amendment unless exigent circumstances are present. *O'Neill v. Kerrigan*, 2013 WL 654409 at *4 (E.D. Pa. 2013).

Finally, in all of the cases reviewed, none of those cases involve the specific facts alleged in this matter with regard to one factor; Bethel Park police obtained a warrant for plaintiff's arrest and asked that the Pitt Police take Plaintiff into custody. It is apparent therefore in assessing the facts as related by Plaintiff that Plaintiff was taken into custody not by Bethel Park but instead by Pitt Police. Plaintiff is therefore arguing in reality that the named Defendants should be held liable for the actions of another police department. No case has ever found liability under these circumstances.

> ii. *Plaintiff's substantive due process rights under the Fourteenth Amendment have not been violated.*

In addition to challenging the manner of his arrest under the Fourth Amendment, O'Neill also alleged Defendants violated his substantive due process rights under the Fourteenth Amendment, presumably predicated upon the existence of a constitutional right to privacy in juvenile arrest records. In determining whether information is entitled to privacy protection, the Third Circuit Court of Appeals has "looked at whether it is within an individual's reasonable expectations of confidentiality. The more intimate or personal the information, the more justified is the expectation that it will not be subject to public scrutiny." *Malleus v. George*, 641 F.3d 560, 564 (3d Cir.2011) (quoting *Fraternal Order of Police v. City of Phila.*, 812 F.2d 105, 112–13 (3d Cir.1987)).

The Third Circuit has held the right to privacy in personal information extends to information regarding minor students' sexual activity, drug and alcohol use, and relationships when requested as part of a community survey, *C.N. v. Ridgewood Bd. of Educ.*, 430 F.3d 159, 180 (3d Cir.2005), and to exposure of a person's unclothed body, *Doe v. Luzerne County*, 660 F.3d 169, 177 (3d Cir.2011). In contrast, the Third Circuit has consistently held the constitutional right to privacy does not extend to criminal records. See *Nunez v. Pachman*, 578 F.3d 228, 232–33 (3d Cir.2009) (holding there is no constitutionally cognizable privacy interest in expunged criminal records); *Paul P. v. Verniero*, 170 F.3d 396, 403–04 (3d Cir.1999) (holding plaintiffs had no constitutional right to privacy in their sex offender status); *Scheetz v. The Morning Call, Inc.*, 946 F.2d 202, 207 (3d Cir.1991) (holding "information contained in a police report is not protected by the confidentiality branch of the constitutional right of privacy"); *Fraternal Order of Police v. City of Philadelphia*, 812 F.2d 105, 117 (3d Cir.1987) (holding arrest records are not entitled to constitutional privacy protection).

In so holding, the Third Circuit has distinguished criminal records from the types of records that are accorded constitutional protection on the basis that arrests and pending criminal charges "are by definition public," making it "unlikely that anyone could have a reasonable expectation that an arrest will remain private information." *Id.* at 117. Further, the Court of Appeals has also declined to recognize a constitutional right to privacy in expunged criminal records, holding that even assuming a state expungement statute could create a reasonable expectation of privacy in an expunged record, such records do not possess any "inherent attributes warranting special constitutional treatment." *Nunez*, 578 F.3d at 232–33.

The Third Circuit has not considered whether there is a constitutional right to privacy in juvenile, as opposed to adult, arrest records. Defendants recognize that confidentiality has been characterized as a "hallmark" of the American juvenile justice system, designed "to protect the young person from the stigma of his misconduct" and thereby to promote the goal of rehabilitation. *Smith v. Daily Mail Publishing Company*, 443 U.S. 97, 107-108 (1979) (Rehnquist, J., concurring). The United States Supreme Court has also recognized states have a legitimate interest in protecting the anonymity of juvenile offenders. See *Davis v. Alaska*, 415 U.S. 308, 319, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974) ("We do not and need not challenge the State's interest as a matter of its own policy in the administration of criminal justice to seek to preserve the anonymity of a juvenile offender."); *In re Gault*, 387 U.S. 1, 25, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967) (suggesting "there is no reason why, consistently with due process, a State cannot continue if it deems it appropriate, to provide and to improve provision for the confidentiality of records of police contacts and court action relating to juveniles"). Nevertheless, even assuming the Third Circuit would recognize a constitutional right to privacy in juvenile arrest records, the *O'Neill*

Court could not conclude such a right is clearly established, especially in light of the fact pattern for that particular case.

The federal courts have found considerable doubt as to whether the constitutional right to privacy extends to juvenile arrest and related records. See *United States v. T.E.S.*, No. 98–4423, 1998 WL 774144, at *1 (4th Cir. Nov.6, 1998) (finding it "doubtful" that a state "may create a constitutionally protected 'reasonable expectation of privacy' in the nondisclosure of a juvenile's criminal record"); *J.P. v. DeSanti*, 653 F.2d 1080, 1088–90 (6th Cir.1981) (holding there is no constitutional right to privacy in juvenile court records as the interest in nondisclosure of such records "is 'far afield' from those privacy rights that are 'fundamental' or 'implicit in the concept of ordered liberty' "); *Hester v. West Virginia*, No. 07–401, 2008 WL 4298471, at *18 (S.D.W.Va. Sept.18, 2008) (finding "there is no recognized substantive ... due process right to privacy in juvenile records"), aff'd, 305 F. App'x 109 (4th Cir.2008); *Beebe v. Mahoney*, No. 07–76, 2008 WL 4198515, at *3 n. 4 (D.Mont. Sept.4, 2008) (noting the federal constitutional right to privacy has not been extended to protect juvenile criminal records); *McCrary v. Jetter*, 665 F.Supp. 182, 186 (E.D.N.Y.1987) (noting the "amorphous right of privacy" has not been applied to disclosure of materials from a youthful offender file without authorization); cf. *Doe v. Town of Madison*, No. 09–2005, 2010 WL 3829186, at *5 (D.Conn. Sept.22, 2010) (holding whether or not a constitutional right to privacy in juvenile records exists, such a right "cannot be said to be clearly established in [the Second Circuit] or other circuits").

The only case the *O'Neill* Court recognized in which a court squarely recognized a constitutional right to privacy in juvenile records is *Soucie v. County of Monroe*, 736 F.Supp. 33 (W.D.N.Y.1990). The plaintiff in *Soucie* alleged a county employee had violated his

constitutional right to privacy by disclosing and publicizing information contained in a pre-sentence report in the plaintiff's "youthful offender" file, the contents of which were confidential under state law. In holding the plaintiff had sufficiently alleged a constitutional violation, the court found the plaintiff could "reasonably believe that his pre-sentence disclosures would remain private" based on the state law confidentiality provisions. *Id*. at 36. As noted above, the Third Circuit has rejected the notion that state confidentiality law alone may define the scope of federal constitutional right to privacy**.** See *Nunez*, 578 F.3d at 233 & n. 14; *Scheetz*, 946 F.2d at 207.

The *O'Neill* Court believed it should have been clear to Defendants that disclosing the charges against O'Neill to the principal in the absence of a delinquency finding or a court order violated state law.  Nevertheless, given the lack of precedent supporting a constitutional right to privacy in juvenile arrest records and the Third Circuit's hesitation to expand the protection against disclosure of personal matters beyond the categories of sexual, medical, and financial information, the Court refused to conclude it would have been clear to a reasonable officer that disclosure of the charges violated O'Neill's constitutional right to privacy.

Accordingly, Defendants in the present matter are also entitled to qualified immunity as to Plaintiff's substantive due process claims.

> **B.      Plaintiff cannot sufficiently plead the state law tort of False Light.**

Count IV of Plaintiff's Complaint alleges the state saw tort of False Light against all Defendants, alleging that "[b]y having Plaintiff publicly arrested, Defendants acted in reckless disregard of the truth and cast Plaintiff in the false light of a criminal."  ECF, Doc. 1 at ¶125.

The tort of false light involves "publicity that unreasonably places the other in a false light before the public." *Ciolli v. Iravani*, 651 F.Supp.2d 356, 376 (E.D.Pa.2009) (quoting *Rush v.*

*Phila. Newspapers, Inc.*, 732 A.2d 648, 654 (Pa.Super.Ct.1999)).  In order to establish a cause of action for false light, it must be shown that: (1) the false light in which the plaintiff was placed would be highly offensive to a reasonable person; and (2) the defendant had knowledge or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the plaintiff would be placed. *Lin v. Rohm and Haas Co.*, 293 F.Supp.2d 505, 521–22 (E.D.Pa.2003) (citing *Curran v. Children's Serv. Ctr.*, 396 Pa.Super. 29, 578 A.2d 8, 12 (1990) (quoting Restatement (Second) of Torts § 652E)).  Further, the false light in which the plaintiff is placed must "entail such a 'major misrepresentation of [the plaintiff's] character, history, activities or beliefs that serious offense may reasonably be expected to be taken.'" *Puchalski v. Sch. Dist. of Springfield*, 161 F.Supp.2d 395, 410 (E.D.Pa.2001).

The difference between invasion of privacy—false light and defamation is "false light invasion of privacy offers redress not merely for the publication of matters that are provably false, but also for those that, although true, are selectively publicized in a manner creating a false impression."  To prove invasion of privacy false light "[i]t is enough that [the plaintiff] is given unreasonable and highly objectionable publicity that attributes to him characteristics, conduct or beliefs that are false, and so is placed before the public in a false position."  Restatement (Second) Torts § 652E cmt. b (describing false light invasion of privacy's relation to defamation). Essentially, "[t]he tort of false light is ... committed when someone tells part of the story, and selects the worst parts of the story to make the other look bad."

In the present matter, Defendants provided only truthful information about an ongoing investigation, and in no way acted in reckless disregard as to the falsity of reports, for the simple reason they did not provide false information.  On January 10, 2022, Plaintiff admitted to

"Indecent Assault Person Less than 13 Years of Age". 18 § 3126 §§ A7. See Adjudicatory/Dispositional Hearing Order dated January 10, 2022, attached hereto as **Exhibit "A-1"**. A person is guilty of indecent assault if the person has indecent contact with the complainant, causes the complainant to have indecent contact with the person or intentionally causes the complainant to come into contact with seminal fluid, urine or feces for the purpose of arousing sexual desire in the person or the complainant and … the complainant is less than 13 years of age. *Id*. Plaintiff's Complaint alleges that "[b]y having Plaintiff publicly arrested, Defendants acted in reckless disregard of the truth and cast Plaintiff in the false light of a criminal." See, ECF Doc. 1, ¶125. Following Plaintiff's arrest, he admitted to the above described criminal violation. Plaintiff appears to argue that, despite Plaintiff's criminal activity, his arrest suggested to the public that he was a "criminal on the run from the law". *Id*. at ¶126. Given the seriousness of the charges brought against Plaintiff, and his ultimate admission of guilt, there is no false light in which the plaintiff was placed which would be highly offensive to a reasonable person. Defendants simply relayed truthful information which was necessary to justify their presence at plaintiff's dormitory, which resulted in his lawful arrest.

## V. REQUESTED RELIEF

For all of the foregoing reasons, it is respectfully requested that the Court dismiss Plaintiff's Complaint in its entirety, with prejudice, because it fails to assert any colorable violation of Plaintiff's Constitutional rights.

Respectfully submitted,

**MARSHALL DENNEHEY WARNER COLEMAN & GOGGIN**

By: _____
Paul D. Krepps, Esquire
Attorney I.D. No: 73038
Union Trust Building, Suite 700
501 Grant Street
Pittsburgh, PA 15219
(412) 803-1149 (Telephone)
(412) 803-1188 (Fax)
pdkrepps@mdwcg.com
**Counsel for Defendants**