IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JUVENILE "VR" NOW 21 YEARS OF AGE, | CIVIL DIVISION |
| Plaintiff, | No: 2:22-cv-1499 |
| v. | US District Judge W. Scott Hardy |
| JOELLE DIXON, | |
| and | **ELECTRONICALLY FILED** |
| BETHEL PARK POLICE DEPARTMENT 5100 W. Library Avenue Bethel Park, PA 15102, | **JURY TRIAL DEMANDED** |
| Defendants. | |

### DEFENDANTS' BRIEF IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT FOR FAILURE TO STATE A CLAIM

### I.   FACTUAL AND PROCEDURAL BACKGROUND

On October 25, 2022, Plaintiff, Juvenile "VR", filed a Complaint in the United States District Court for the Western District of Pennsylvania. ECF Doc. 1. On July 24, 2024, this Court granted Defendants' Motion to Dismiss Plaintiff's Complaint without prejudice, with leave to amend the Complaint by September 6, 2024. ECF Doc. 36.

On October 6, 2024, Plaintiff filed an Amended Complaint, which is substantially the same as the original Complaint, but purports to clarify the counts made against the remaining Defendants[1] by eliminating duplicative averments and essentially re-ordering the remaining

---

[1] Plaintiff's Amended Complaint removes as a Defendant, Timothy O'Connor, Chief, Municipality of Bethel Park Police Department, individually and in his official capacity, due to his death on December 26, 2023.

averments in this attempt for clarity. Nevertheless, Plaintiff's Amended Complaint continues to assert the same claims, albeit in a different order, as follows: Fourth and Fourteenth Amendment §1983 violations regarding an alleged constitutionally protected Right to Personal Privacy (Counts I and II against Defendant Joelle Dixon, Detective, Municipality of Bethel Park Police Department, Individually and in her official capacity (hereinafter "Detective Dixon")), Fourth and Fourteenth Amendment §1983 violations regarding Plaintiff's alleged wrongful arrest (Count III against Detective Dixon), Fourth and Fourteenth Amendment §1983 violations for failure to properly train and supervise its employee (Count IV against Bethel Park Police Department), and state law tort of False Light (Count V against Detective Dixon).

The events which form the basis of Plaintiff's Amended Complaint occurred on October 21, 2021, when three University of Pittsburgh Police Department officers arrived at Plaintiff's dormitory and took him into custody. ECF Doc. 43 at ¶¶15-18. At the time of the offense Plaintiff was 17 years old. *Id*. at ¶20. Plaintiff further alleges that during his arrest, he was escorted through his dormitory with his arrest being made into a "public spectacle". *Id*. at ¶¶21-23. Thereafter, Plaintiff alleges that Detective Dixon and the now deceased Chief O'Connor unlawfully contacted the administration at the University of Pittsburgh to inform them that Plaintiff had been arrested, leading to an indefinite suspension. *Id*. at ¶¶33-44.

Plaintiff's claims can be summarized as follows; that even though he was an adult at the time of his arrest, he is entitled to the "right" of privacy provided for as a juvenile offender. He claims that Defendants violated his right to personal privacy under state law and as guaranteed by the U.S. Constitution.

## II. STANDARD OF REVIEW

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b) (6) challenges the legal sufficiency of the Complaint. *Kost v. Dozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). While

all well-pleaded facts, as distinguished from conclusory allegations, should be taken as true, "a Court need not credit a complaint's bald assertions or 'legal conclusions' when deciding a Motion to Dismiss." *Morse v. Lower Merion School Dist.*, 132 F.3d 902, 906 (3d Cir. 1997). The Court is "not required to accept legal conclusions either alleged or inferred from the pleaded facts." *Kost*, 1 F.3d at 183. Furthermore, the Court is not bound "to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allian*, 478 U.S. 265, 286 (1986).

In *Phillips v. County of Allegheny*, 515 F.3d 224 (3d Cir. 2008), the Third Circuit addressed how the standard for motions to dismiss under Federal Rule of Civil Procedure 12(b)(6) has been affected by the Supreme Court's recent decision in *Bell Atlantic v. Twombly*, 515 F.3d at 230-35. The following rules are gleaned from the lengthy discussion in *Phillips*: The rule remains that Rule 8 "requires only a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the ... claim is and the grounds upon which it rests, and that this standard does not require detailed factual allegations." *Phillips*, 515 F.3d at 231 (internal quotations and citations omitted). Furthermore, "the facts alleged must be taken as true and a complaint may not be dismissed merely because it appears unlikely that the plaintiff can prove those facts or will ultimately prevail on the merits." *Id.* (citations omitted).

Two new concepts are taken from *Twombly*: First, "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's [Rule 8] obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 127 S.Ct. at 1964-65 (alteration in original) (internal citations omitted). That is, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.* at 1965 & n. 3; *See, Phillips*, 515 F.3d at 231. Second, the Supreme Court disavowed certain

language previously used, which required district courts to ensure that the plaintiff could allege "no set of facts" to maintain a claim. *See*, *Twombly*, 127 S. Ct. at 1968-69 ("[t]his phrase is best forgotten as an incomplete, negative gloss on an accepted pleading standard: once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint."); *Phillips*, 515 F.3d at 231.

Based on *Twombly* and a related decision, the Third Circuit "understand[s] the Court to instruct that a situation may arise where, at some point, the factual detail in a complaint is so undeveloped that it does not provide a defendant the type of notice of claim which is contemplated by Rule 8." *Phillips*, 515 F.3d at 232. "Put another way, in light of *Twombly*, Rule 8(a)(2) requires a 'showing' rather than a blanket assertion of an entitlement to relief." *Id*.

Furthermore, the standard announced in *Twombly* requires that a plaintiff alleges facts so as to show his claim as "plausible." *See*, *Phillips*, 515 F.3d at 234 ("The Court explained that a plaintiff must 'nudge [his or her] claims across the line from conceivable to plausible' in order to survive a motion to dismiss." (*citing Twombly*, 127 S.Ct. at 1974)).

In evaluating whether Plaintiffs met their pleading burden in order to survive a motion to dismiss, the Court should conduct a two part analysis. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-211 (3d Cir. Pa. 2009). First, the Court must separate the factual allegations and the legal allegations contained in the complaint. The Court "must accept all of the complaints well-pleaded facts as true, but may disregard any legal conclusions." *Id*. Second, the Court "must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a plausible claim for relief.'" *Id*. at 211 (*citing Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)). If the well-plead facts only permit the Court to infer the "mere possibility of misconduct, [then] the complaint has alleged—but has not 'show[n]'—'that the pleader is entitled to relief." *Iqbal*, 556

U.S. at 679 (citing Fed.R.Civ.P. 8(a)(2)).  When a complaint has not shown the existence of a plausible claim, Plaintiffs are not entitled to relief and the claim must be dismissed.  *Id*. at 678-670.

In considering a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6), "a court may look beyond the complaint to matters of public record, including court files and records, decisions of government agencies and administrative bodies, and documents referenced in the complaint or which are essential to plaintiff' claim and are attached to either the Complaint or the defendant's Motion."  *McGarrey v. Mrs. Marquart*, 2010 U.S. Dist. LEXIS 2183 (W.D.Pa. 2010); *see also*, *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1385 n.2 (3rd Cir. 1994) (noting that court may consider matters of public record, orders, exhibits attached to the complaint and items that appear in the record of the case).

### III. ARGUMENT

#### A. Plaintiff's admission in the juvenile proceeding bars him from arguing there was a lack of probable cause for his arrest.

Plaintiff alleges that he was arrested without a valid arrest warrant supported by probable cause.  *See*  ECF Doc. 43 at "§B. Wrongful arrest of Plaintiff without a warrant supported by probable cause" and ¶¶93-106.  This is a thinly veiled attempt by Plaintiff to collaterally attack the state court adjudication by relying upon the false premise that his arrest was not by an authorized warrant supported by probable cause.  Further, Plaintiff's claims are a misrepresentation of facts in relation to the juvenile court proceedings.

Attached to the Motion to Dismiss is the affidavit of Detective Dixon.  ECF 55 at Exhibit A.  Her affidavit was necessary because Plaintiff, despite being an adult, has hidden his identity by identifying himself as "Juvenile "VR" … ".  Therefore, the affidavit is necessary in order to authenticate a document entitled "Adjudicatory/Dispositional Hearing Order" (hereafter "Order"),

LEGAL/165317970.1

5

wherein the detective affirmed that this document was prepared by the juvenile court to memorialize the adjudication of the criminal charges pending against Plaintiff (appropriately redacted).

In ruling on the within Motion to Dismiss it is permissible for this Court to consider documents outside the pleadings as follows:

> Courts have defined a public record, for purposes of what properly may be considered on a motion to dismiss, **to include criminal case dispositions such as convictions or mistrials**, see Collins v. County of Kendall, Ill., 807 F.2d 95, 99 n. 6 (7th Cir.1986), cert. denied, 483 U.S. 1005, 107 S.Ct. 3228, 97 L.Ed.2d 734 (1987), letter decisions of government agencies, see Phillips v. Bureau of Prisons, 591 F.2d 966, 968 (D.C.Cir.1979), and published reports of administrative bodies, see Mack v. South Bay Beer Distrib., 798 F.2d 1279, 1282 (9th Cir.1986).

*Pension Ben. Guar. Corp. v. White Consol. Indus., Inc*., 998 F.2d 1192, 1197 (3d Cir. 1993)(emphasis added).

In pertinent part the Order further sets forth that:

> The juvenile has tendered an admission to some or all of the delinquent acts alleged in the Petition … the admission is knowingly, intelligently and voluntarily made, and conforms to the requirement of the Pa. R.J.C.P. §407; therefore, the admission is accepted by this Court.

ECF 55 at Exhibit A-1.

The Order further directs that "The juvenile [Plaintiff] is in need of treatment, supervision or rehabilitation." *Id.* Plaintiff was therefore "ADJUDICATED DELINQUENT" and placed on probation. *Id.*

Probable cause is conclusively established to exist at the time an arrest is made when there is a subsequent guilty plea or conviction. *Domitrovich v. Monaca*, 2010 WL 3489137 (W.D.Pa. September 1, 2010); see also *Shilling v. Brush*, No. 05–871, 2007 WL 210802, *9 (M.D.Pa.

January 22, 2007) ("Probable cause is established by a guilty plea."). Thus, given Plaintiff's admission of guilt as set forth above, probable cause has been conclusively established.

It is a fundamental fact that federal courts are not authorized to sit as appellate courts over final state court adjudications.

> A determination that the proceedings on Feldman's and Hickey's petitions were judicial does not finally dispose of this case. As we have noted, *supra*, at 1311, **a United States District Court has no authority to review final judgments of a state court in judicial proceedings**. Review of such judgments may be had only in this Court.

*D.C. Ct. of Appeals v. Feldman*, 460 U.S. 462, 482, 103 S. Ct. 1303, 1315, 75 L. Ed. 2d 206 (1983)(emphasis added).

> i. *Plaintiff's juvenile adjudication should be treated by federal courts as the functional equivalent of a "conviction" or "sentence" triggering the Heck bar.*

The focused question for this Court in the present case is whether federal courts can treat a juvenile adjudication as the functional equivalent of a "conviction" or "sentence" triggering the *Heck* bar when state law expressly states that juvenile adjudications are not criminal convictions. The answer is in the affirmative and the *Heck* doctrine clearly applies to juvenile adjudications. *Grande v. Keansburg Borough*, 2013 WL 2933794 (3d Cir.2013); see also *Adkins v. Johnson*, 482 Fed. Appx. 318, 319 (10th Cir.) (stating that "the district court correctly ruled that *Heck* ... bars a suit for damages based on the allegations that implicate the validity of the five juvenile judgments"), cert. denied, ––– U.S. ––––, 133 S.Ct. 439, 184 L.Ed.2d 268 (2012); *Morris v. City of Detroit*, 211 Fed. Appx. 409, 411 (6th Cir. 2006) (stating that "a juvenile adjudication" is the "functional equivalent" of a criminal proceeding and *Heck* applies to the case); *Dominguez v. Shaw*, 2011 WL 4543901, *2 (D.Ariz. Sept.30, 2011); *Clark v. Conahan*, 737 F.Supp.2d. 239, 254 (M.D.Pa.2010); *Knight v. Thomas*, 2008 WL 1957905, at *8–9 (N.D.Ind. May 2, 2008).

Plaintiff is barred "from succeeding in a tort action after having been convicted in the underlying criminal prosecution, which would run counter to the judicial policy against two conflicting resolutions arising from the same transaction." *Gilles v. Davis*, 427 F.3d 197, 209 (3d Cir.2005). This Court is compelled to apply the doctrine to the facts of this case, that Plaintiff was adjudicated delinquent rather than being convicted as an adult for the sexual assault of a child, and requires dismissal of this claim.

Further, the Third Circuit has observed that "if a section 1983 plaintiff seeks to recover for an unconstitutional conviction, imprisonment, or other harm caused by actions whose unlawfulness would render the conviction or sentence unlawful, the plaintiff must prove that the conviction or sentence has been reversed, expunged, or declared invalid." *Torres v. McLaughlin*, 163 F.3d 169, 173 (3d Cir.1998). Thus, a §1983 plaintiff is barred from recovery whenever the claims would "necessarily implicate the conviction." *Id*. at 173. Here, Plaintiff's admission in his juvenile proceeding precludes any challenge to the existence of probable cause for the arrest. Plaintiff is estopped from contending otherwise.

> **B. Counts I and II of Plaintiff's Amended Complaint fail to allege evidence of a Constitutional violation by Detective Dixon as to Plaintiff's right to privacy.**

Counts I and II of Plaintiff's Amended Complaint assert claims against Detective Dixon, alleging violations of right to privacy under the Fourth and Fourteenth Amendments of the U.S. Constitution. Count I focuses primarily on Plaintiff's "constitutionally protected right to personal privacy in causing his juvenile records to be exposed to the public" concerning what Plaintiff alleges was a "very public arrest, effectively exposing his juvenile records to the public. ECF Doc. 43, at ¶¶50, 63. Count II then focuses primarily on Plaintiff's allegation that Detective Dixon "caused the widespread disclosure of Plaintiff's juvenile records to the University of Pittsburgh community," when she "unlawfully contacted an administrative official at the University to inform

LEGAL/165317970.1

8

him that VR had been arrested, and was or would soon be in custody at a juvenile detention facility." *Id*. at ¶¶68, 71.

> i. *The 42 U.S.C. §1983 claims within Counts I and II of Plaintiff's Amended Complaint should be dismissed, with prejudice, on the basis of qualified immunity.*

Counts I and II fail to allege evidence of a Constitutional violation by Detective Dixon as to Plaintiff's right to privacy. Plaintiff alleges that Detective Dixon provided University of Pittsburgh officials with notice of Plaintiff's arrest and the nature of the charges brought against him. *Id*. at ¶¶33-34. Taking this as true, the question becomes whether this would be enough for an invasion of privacy claim. It is not enough.

*O'Neill v. Kerrigan* 2013 WL 654409 (E.D. Pa. 2013) is instructive as to how these Counts fail as a matter of law. In *O'Neill*, a juvenile Plaintiff was arrested at school pursuant to a valid juvenile arrest warrant charging him with possession and delivery of marijuana off school grounds[2]. The charges against the juvenile were ultimately resolved in a consent decree which established a six-month period of probation. Plaintiff then brought an action pursuant to 42 U.S.C. §1983 against the arresting officers and police department, alleging privacy protections to which he was entitled as a juvenile, and in violation of his Fourth, Ninth, and Fourteenth Amendment rights. Defendants filed a Rule 12 motion based upon the argument that no constitutional rights of Plaintiff were clearly established at the time of his arrest. Defendants' motion was ultimately granted as to the §1983 claims on the basis of qualified immunity.

In *O'Neill*, Defendants argued that common sense dictates that police officers must be able to provide school officials with some "basic information as to the circumstances of the incident

---

[2] Plaintiff is estopped from arguing a lack of probable cause for his arrest due to his own admission of guilt, effectively eliminating the difference to which it is anticipated that Plaintiff will argue makes *O'Neill* inapplicable to the present matter.

which led to the arrest" so as to be able to justify their presence on school grounds. *O'Neill v. Kerrigan,* 2013 WL 654409 at *3 (E.D. Pa. 2013).

Although not addressed in *O'Neill*, the Second Circuit Court of Appeals has held a lawfully arrested suspect may, in some circumstances, have a Fourth Amendment unreasonable seizure claim where the arrestee was subjected to a "perp walk," in which the suspected perpetrator of a crime, after being arrested, is 'walked' in front of the press so that he can be photographed or filmed." *Lauro v. Charles*, 219 F.3d 202, 203 (2d Cir.2000). However, *O'Neill* found that the Plaintiff's arrest was distinguishable from the kind of "perp walk" that has been held to violate the Fourth Amendment. Compare *Lauro*, 219 F.3d at 203–04, 211–13 (holding a staged perp walk, which occurred two hours after the suspect had been arrested and brought to the police station and involved taking the suspect outside the station, "at the request of the press, for no reason other than to allow him to be photographed," and which thus "lacked any legitimate law enforcement purpose," violated the Fourth Amendment), with *Caldarola v. Cnty. of Westchester*, 343 F.3d 570, 572, 575–77 (2d Cir.2003) (holding an unstaged perp walk, in which County officials videotaped employees arrested for submitting fraudulent disability claims while employees were escorted from the County building in which they were arrested to cars in which they were taken to the police station for booking, did not violate the Fourth Amendment where County "possessed a 'legitimate law enforcement justification for transporting' [arrested employees] ... to the police station" (quoting *Lauro*, 219 F.3d at 213)).

Similar to the instant matter, in *O'Neill*, Plaintiff alleges his "friend and other students witnessed Plaintiff's arrest in his dormitory. The public spectacle of Plaintiff being arrested and taken away in a police car was a constructive disclosure of a juvenile arrest and criminal record." ECF, Doc. 43 at ¶21. The *O'Neill* Court reasoned that this scenario differs from the perp walks

addressed in both *Lauro* and *Caldarola* in that it involved no media attention or publicity to a broader audience than those present at the site of the arrest.

Moreover, while Plaintiff argues that Defendant Dixon's decision to orchestrate the arrest on school grounds was unnecessary and reflects poor judgment, the arrest cannot be said to have served no legitimate law enforcement purpose. See *Virginia v. Moore*, 553 U.S. 164 (2008) (holding a State has an interest in arresting a person for a minor offense, even when it has a policy against arrests for such offenses, "because arrest will still ensure a suspect's appearance at trial, prevent him from continuing his offense, and enable officers to investigate the incident more thoroughly"); *Caldarola v. County of Westchester*, 343 F.3d 570, 576 (2d Cir.2003) (noting County "possessed a legitimate law enforcement justification for transporting" arrestee from site of arrest to the police station).

Significantly, the *O'Neill* Court did not identify, and noted that it could not find, any case holding that arresting a juvenile pursuant to a warrant on school grounds, in view of the school community, violates the Fourth Amendment unless exigent circumstances are present. *O'Neill v. Kerrigan*, 2013 WL 654409 at *4 (E.D. Pa. 2013).

Finally, in all of the cases reviewed, none of those cases involve the specific facts alleged in this matter with regard to one factor; Bethel Park police obtained a warrant for plaintiff's arrest and asked that the Pitt Police take Plaintiff into custody. It is apparent therefore in assessing the facts as related by Plaintiff that he was taken into custody not by Bethel Park but instead by Pitt Police. Plaintiff is therefore arguing in reality that the named Defendants should be held liable for the actions of another police department. No case has ever found liability under these circumstances.

        ii.    *Plaintiff's substantive due process rights under the Fourteenth Amendment have not been violated.*

In addition to challenging the manner of his arrest under the Fourth Amendment, *O'Neill* also alleged Detective Dixon violated his substantive due process rights under the Fourteenth Amendment, presumably predicated upon the existence of a constitutional right to privacy in juvenile arrest records. In determining whether information is entitled to privacy protection, the Third Circuit Court of Appeals has "looked at whether it is within an individual's reasonable expectations of confidentiality. The more intimate or personal the information, the more justified is the expectation that it will not be subject to public scrutiny." *Malleus v. George*, 641 F.3d 560, 564 (3d Cir.2011) (quoting *Fraternal Order of Police v. City of Phila.*, 812 F.2d 105, 112–13 (3d Cir.1987)).

The Third Circuit has held the right to privacy in personal information extends to information regarding minor students' sexual activity, drug and alcohol use, and relationships when requested as part of a community survey, *C.N. v. Ridgewood Bd. of Educ.*, 430 F.3d 159, 180 (3d Cir.2005), and to exposure of a person's unclothed body, *Doe v. Luzerne County*, 660 F.3d 169, 177 (3d Cir.2011). In contrast, the Third Circuit has consistently held the constitutional right to privacy does not extend to criminal records. See *Nunez v. Pachman*, 578 F.3d 228, 232–33 (3d Cir.2009) (holding there is no constitutionally cognizable privacy interest in expunged criminal records); *Paul P. v. Verniero*, 170 F.3d 396, 403–04 (3d Cir.1999) (holding plaintiffs had no constitutional right to privacy in their sex offender status); *Scheetz v. The Morning Call, Inc.*, 946 F.2d 202, 207 (3d Cir.1991) (holding "information contained in a police report is not protected by the confidentiality branch of the constitutional right of privacy"); *Fraternal Order of Police v. City of Philadelphia*, 812 F.2d 105, 117 (3d Cir.1987) (holding arrest records are not entitled to constitutional privacy protection).

In so holding, the Third Circuit has distinguished criminal records from the types of records that are accorded constitutional protection on the basis that arrests and pending criminal charges "are by definition public," making it "unlikely that anyone could have a reasonable expectation that an arrest will remain private information." *Id.* at 117. Further, the Court of Appeals has also declined to recognize a constitutional right to privacy in expunged criminal records, holding that even assuming a state expungement statute could create a reasonable expectation of privacy in an expunged record, such records do not possess any "inherent attributes warranting special constitutional treatment." *Nunez*, 578 F.3d at 232–33.

### iii. The Third Circuit does not recognize any constitutional right to privacy in juvenile records.

The Third Circuit has not considered whether there is a constitutional right to privacy in juvenile, as opposed to adult, arrest records. It is recognized that confidentiality has been characterized as a "hallmark" of the American juvenile justice system, designed "to protect the young person from the stigma of his misconduct" and thereby to promote the goal of rehabilitation. *Smith v. Daily Mail Publishing Company*, 443 U.S. 97, 107-108 (1979) (Rehnquist, J., concurring). The United States Supreme Court has also recognized states have a legitimate interest in protecting the anonymity of juvenile offenders. See *Davis v. Alaska*, 415 U.S. 308, 319, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974) ("We do not and need not challenge the State's interest as a matter of its own policy in the administration of criminal justice to seek to preserve the anonymity of a juvenile offender."); *In re Gault*, 387 U.S. 1, 25, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967) (suggesting "there is no reason why, consistently with due process, a State cannot continue if it deems it appropriate, to provide and to improve provision for the confidentiality of records of police contacts and court action relating to juveniles"). Nevertheless, even assuming the Third Circuit would recognize a constitutional right to privacy in juvenile arrest records, the *O'Neill* Court could not conclude such

a right is clearly established, especially in light of the fact pattern for that particular case. Significantly, *O'Neill* was ruled upon in 2013 and remains good law. Therefore, until the law of this Circuit diverges from its holding in *O'Neill*, Plaintiff cannot state a §1983 claim.

The federal courts have found considerable doubt as to whether the constitutional right to privacy extends to juvenile arrest and related records. See *United States v. T.E.S.*, No. 98–4423, 1998 WL 774144, at *1 (4th Cir. Nov.6, 1998) (finding it "doubtful" that a state "may create a constitutionally protected 'reasonable expectation of privacy' in the nondisclosure of a juvenile's criminal record"); *J.P. v. DeSanti*, 653 F.2d 1080, 1088–90 (6th Cir.1981) (holding there is no constitutional right to privacy in juvenile court records as the interest in nondisclosure of such records "is 'far afield' from those privacy rights that are 'fundamental' or 'implicit in the concept of ordered liberty' "); *Hester v. West Virginia*, No. 07–401, 2008 WL 4298471, at *18 (S.D.W.Va. Sept.18, 2008) (finding "there is no recognized substantive ... due process right to privacy in juvenile records"), aff'd, 305 F. App'x 109 (4th Cir.2008); *Beebe v. Mahoney*, No. 07–76, 2008 WL 4198515, at *3 n. 4 (D.Mont. Sept.4, 2008) (noting the federal constitutional right to privacy has not been extended to protect juvenile criminal records); *McCrary v. Jetter*, 665 F.Supp. 182, 186 (E.D.N.Y.1987) (noting the "amorphous right of privacy" has not been applied to disclosure of materials from a youthful offender file without authorization); cf. *Doe v. Town of Madison*, No. 09–2005, 2010 WL 3829186, at *5 (D.Conn. Sept.22, 2010) (holding whether or not a constitutional right to privacy in juvenile records exists, such a right "cannot be said to be clearly established in [the Second Circuit] or other circuits").

The only case the *O'Neill* Court recognized in which a court squarely recognized a constitutional right to privacy in juvenile records is *Soucie v. County of Monroe*, 736 F.Supp. 33 (W.D.N.Y.1990). The plaintiff in *Soucie* alleged a county employee had violated his constitutional

right to privacy by disclosing and publicizing information contained in a pre-sentence report in the plaintiff's "youthful offender" file, the contents of which were confidential under state law. In holding the plaintiff had sufficiently alleged a constitutional violation, the court found the plaintiff could "reasonably believe that his pre-sentence disclosures would remain private" based on the state law confidentiality provisions. *Id*. at 36. Compare to *Wagner v. Hyra*, 58 F.Supp.3d 613 (N.D.N.Y. 2021) (Defendant police officers were alleged to have released Plaintiff's juvenile arrest information to the press and other law enforcement agencies in a concerted effort to damage him "in his personal and professional life" and to "gain retribution" against him for daring to file an earlier criminal complaint.  Under those circumstances the court found that Plaintiff had plausibly alleged that his privacy interest was intentionally violated by defendants in an egregious, conscience-shocking manner.).

The *O'Neill* Court believed it should have been clear to Defendants that disclosing the charges against O'Neill to the principal in the absence of a delinquency finding or a court order violated state law.  Nevertheless, given the lack of precedent supporting a constitutional right to privacy in juvenile arrest records and the Third Circuit's hesitation to expand the protection against disclosure of personal matters beyond the categories of sexual, medical, and financial information, the Court refused to conclude it would have been clear to a reasonable officer that disclosure of the charges violated O'Neill's constitutional right to privacy.

In the present matter, Plaintiff alleges that Matthew Landy, Associate Director of Student Conduct, sent a letter notifying him that he had been placed on "Interim Suspension" for an indefinite period, and that he was officially "*Persona Non-Grata* on all University property" during the suspension period and that if he set foot on campus, he would be "subject to immediate arrest." *Id*. at ¶¶36-38. Plaintiff further alleges that "Mr. Landy then went on to send copies of

his letter to six other high-ranking University officials, thus disclosing to an even wider audience the prejudicial information Dixon had communicated about Plaintiff. These officials included the Vice Provost for Student Affairs, Dean of Students, and persons of responsibility in the Department of Public Safety, Office of University Counsel, and Offices of Residence Life and University Housing. " *Id*. at ¶¶39-40. Plaintiff places emphasis on the averment that "Mr. Landy placed no restraints on these officials to refrain from sharing the information with other persons, whether in the University community or elsewhere." *Id*. at ¶42.

Plaintiff's averment as to lack of restraints for forwarding this information is an obvious attempt to ask the Court to make the logical leap that, absent the express directive to not share Plaintiff's information, those top ranking University officials would then somehow disseminate that information to the public. There are no averments as to these officials doing so for the simple reason that no further disclosures were made. Advising school officials, only, that one of its dormitory residents had been charged with the sexual assault of a minor, out of concern of protecting the many other students at that university, is not the type of "egregious, conscience-shocking" revelations as envisioned by *Wagner*. Further, society's general interest in the prevention of crime is even more compelling when the suspect is a juvenile because of a state's parens patriae interest in the welfare of the child. *Schall v. Martin*, 467 U.S. 253, 81 L.Ed 2d 207, 216, 52 U.S.L.W. 4681, 4684-4685 (U.S. June 4, 1984). See also *Eddings v. Oklahoma*, 455 U.S. 104, 115 (1982) (minority "is a time and condition of life when a person may be most susceptible to influence and psychological damage"); *Bellotti v. Baird*, 443 U.S. 622, 635 (1979) (juveniles "often lack the experience, perspective and judgment to recognize and avoid choices that could be detrimental to them"). Lastly, students have a lessened expectation of privacy in a school environment because of the expected restraint necessary for security or discipline and the constant

interaction among students, faculty and administrators. See, e.g., *In re L.L.*, 90 Wis.2d 585, 600-601, 280 N.W.2d 343, 350-351 (1979).  This examination of the school environment demonstrates that a student necessarily has a diminished expectation of privacy upon entering a school.

Accordingly, Detective Dixon in the present matter is also entitled to qualified immunity as to Plaintiff's substantive due process claims.

### C.   Count IV of Plaintiff's Amended Complaint fails as a matter of law.

Count IV of Plaintiff's Amended Complaint asserts a claim against Defendant Bethel Park Police Department, alleging violations under the Fourth and Fourteenth Amendments of the U.S. Constitution for failure to properly train and supervise its employee.  However, a police department is not an entity which may be separately sued, merely a subunit of a municipality of which it is a part.  It is, therefore, not amenable to suit.

> Although Plaintiffs name the Reserve Township Police Department as a party defendant, the Police Department is not a proper party. In *Golya v. Golya*, the district court noted that although the United States Court of Appeals for the Third Circuit has not issued a precedential opinion on this issue, other courts in this circuit have concluded that "a police department is merely a subunit of the local government and is not amenable to suit under §1983." *Golya v. Golya*, No. 3:CV-05-0100, 2007 U.S. Dist. LEXIS 58093, 2007 WL 2301085, at *9 (M.D. Pa. Aug. 9, 2007) (collecting cases), *cited in, Dicesare v. Office of Children, Youth & Families*, Civil Action No. 11-985, 2012 U.S. Dist. LEXIS 96723, 2012 WL 2872811, at *3 (W.D. Pa. July 12, 2012). *See also Johnson v. City of Erie*, 834 F. Supp. 873, 878-79 (W.D. Pa. 1993) ("The numerous courts that have considered the question of whether a municipal police department is a proper defendant in a §1983 action have unanimously reached the conclusion that it is not.") (collecting cases).

*Thompson v. Hens-Greco*, 2017 U.S. Dist. LEXIS 106934, *20-21 (W.D. Pa. 2017);  *Dooley v. City of Phila.*, 153 F.Supp.2d 628, 637 (E.D. Pa. 2001).

Accordingly, Defendant Bethel Park Police Department must be dismissed from this action with prejudice.

LEGAL/165317970.1

17

### D. Plaintiff cannot sufficiently plead the state law tort of False Light.

Count V of Plaintiff's Amended Complaint alleges the state law tort of False Light against all Defendants, alleging that "[b]y the public manner in which Dixon chose to have Plaintiff arrested, Dixon recklessly conveyed an impression that would lead a reasonable person to conclude that there was probable cause to arrest Plaintiff, that he had committed a crime as an adult, and that perhaps he was a fugitive from the law for a serious offense." ECF Doc. 43 at ¶142.

The tort of false light involves "publicity that unreasonably places the other in a false light before the public." *Ciolli v. Iravani*, 651 F.Supp.2d 356, 376 (E.D.Pa.2009) (quoting *Rush v. Phila. Newspapers, Inc.*, 732 A.2d 648, 654 (Pa.Super.Ct.1999)). In order to establish a cause of action for false light, it must be shown that: (1) the false light in which the plaintiff was placed would be highly offensive to a reasonable person; and (2) the defendant had knowledge or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the plaintiff would be placed. *Lin v. Rohm and Haas Co.*, 293 F.Supp.2d 505, 521–22 (E.D.Pa.2003) (citing *Curran v. Children's Serv. Ctr.*, 396 Pa.Super. 29, 578 A.2d 8, 12 (1990) (quoting Restatement (Second) of Torts §652E)). Further, the false light in which the plaintiff is placed must "entail such a 'major misrepresentation of [the plaintiff's] character, history, activities or beliefs that serious offense may reasonably be expected to be taken.'" *Puchalski v. Sch. Dist. of Springfield*, 161 F.Supp.2d 395, 410 (E.D.Pa.2001).

The difference between invasion of privacy—false light and defamation is "false light invasion of privacy offers redress not merely for the publication of matters that are provably false, but also for those that, although true, are selectively publicized in a manner creating a false impression." To prove invasion of privacy false light "[i]t is enough that [the plaintiff] is given unreasonable and highly objectionable publicity that attributes to him characteristics, conduct or beliefs that are false, and so is placed before the public in a false position." Restatement (Second)

LEGAL/165317970.1

18

Torts §652E cmt. b (describing false light invasion of privacy's relation to defamation). Essentially, "[t]he tort of false light is ... committed when someone tells part of the story, and selects the worst parts of the story to make the other look bad."

In the present matter, Defendants provided only truthful information about an ongoing investigation, and in no way acted in reckless disregard as to the falsity of reports, for the simple reason they did not provide false information. On January 10, 2022, Plaintiff admitted to "Indecent Assault Person Less than 13 Years of Age". 18 §3126 §§A7. See Adjudicatory/Dispositional Hearing Order dated January 10, 2022, attached hereto as Exhibit "A-1". A person is guilty of indecent assault if the person has indecent contact with the complainant, causes the complainant to have indecent contact with the person or intentionally causes the complainant to come into contact with seminal fluid, urine or feces for the purpose of arousing sexual desire in the person or the complainant and … the complainant is less than 13 years of age. *Id*.

Given the seriousness of the charges brought against Plaintiff, and his ultimate admission of guilt, there is no false light in which the plaintiff was placed which would be highly offensive to a reasonable person. Defendants simply relayed truthful information which was necessary to justify their presence at plaintiff's dormitory, which resulted in his lawful arrest. While Plaintiff may not have been brandishing a weapon or creating an obvious type of immediate threat of death that Plaintiff apparently argues would be necessary in order to remove him from his dormitory, the charges against Plaintiff created legitimate concern by the arresting officers that Plaintiff could be an ongoing threat to other students. Further, false-light tort requires actual malice. *See* 3 Restatement (Second) of Torts §652E; *Graboff v. Colleran Firm*, 744 F.3d 128, 136 (3d Cir. 2014) (noting that Pennsylvania follows the Second Restatement). Defendants simply relayed the

necessary information to justify the officers' presence at Plaintiff's dormitory to effect a lawful arrest.

## IV. REQUESTED RELIEF

For all of the foregoing reasons, it is respectfully requested that the Court dismiss Plaintiff's Amended Complaint in its entirety, with prejudice, because it fails to assert any colorable violation of Plaintiff's Constitutional rights.

Respectfully submitted,

**MARSHALL DENNEHEY, P.C.**

BY: *s/ Paul D. Krepps*
PAUL D. KREPPS, ESQUIRE
PA ID #73038
NATHAN D. MARINKOVICH, ESQUIRE
PA ID #317125
**Counsel for Defendants**
Union Trust Building, Suite 700
501 Grant Street
Pittsburgh, PA  15219
412-803-1140
412-803-1188 fax
pdkrepps@mdwcg.com
ndmarinkovich@mdwcg.com