IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JUVENILE 'VR'<br>NOW 22 YEARS OF AGE<br><br>                      *Plaintiff,*<br><br>vs.<br><br>MUNICIPALITY OF BETHEL PARK<br><br>and<br><br>MUNICIPALITY OF BETHEL PARK POLICE DEPARTMENT<br><br>and<br><br>JOELLE DIXON, Detective, Municipality of Bethel Park Police Department, individually and in her official capacity.<br><br>                      *Defendants*. | CIVIL ACTION<br><br>No: 2:22-cv-1499<br><br>U.S. District Judge W. Scott Hardy<br><br>ELECTRONICALLY FILED<br>JURY TRIAL DEMANDED |

**PLAINTIFF'S RESPONSE AND SUPPORTING BRIEF TO DEFENDANTS' SUPPLEMENTAL MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**

**AND NOW**, comes Plaintiff Juvenile "V.R.," by and through undersigned counsel, to file Plaintiff's Response and Supporting Brief to Defendants' Supplemental Motion to Dismiss Plaintiff's Amended Complaint, averring as follows:

**I.    INTRODUCTION**

In a Stipulation (ECF Doc. 67) filed with the Court on March 31, 2025, Plaintiff and Defendants' counsel agreed that the Municipality of Bethel Park is a defendant in this matter. The Stipulation also clarified that Defendant Joelle Dixon is being sued in both her personal and official capacities.

Counsel further stipulated that Defendants had leave to file a supplemental motion to dismiss in order to address the *Monell* claims against the Municipality of Bethel Park. The purpose of Defendants' Supplemental Motion to Dismiss and supporting Brief (ECF Doc. 69 and 70) is to

challenge the *Monell* claims in Plaintiff's Second Amended Complaint. This pleading is Plaintiff's response to that motion.

## II.     PROCEDURAL HISTORY; STANDARD OF REVIEW

Defendant's counsel has satisfactorily stated the procedural history of this matter.

Plaintiff incorporates herein the *Iqbal-Twombly* standard of review for a motion to dismiss as set forth in Plaintiff's Response in Opposition to Defendants' Motion to Dismiss (ECF 22 at 3). The Court would ordinarily apply this standard in ruling on a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted. However, Plaintiff contests Defendants' position that this standard of review should be applied to Plaintiff's *Monell* claim prior to discovery.

## III.     DEFENDANTS' ARGUMENTS

Defendants assert three (3) principal arguments in support of their Supplemental Motion to dismiss Plaintiff's *Monell* claims: (1) the violations claimed by Plaintiff in Counts I through III do not rise to the level of constitutional violations, and thus do not give rise to any *Monell* claim under 42 U.S.C. § 1983 (ECF 70 at 3); (2) Plaintiff has failed to cite sufficient facts to state a claim for relief *(id.* at page 3-5) under the well-established pleading standards set forth in *Iqbal-Twombly*; and (3) the fact that Plaintiff ultimately pled guilty to a crime automatically voids any claim of a violation of U.S. Const. amend. IV, thus undermining Count III (ECF Doc. 70 at last paragraph on pages 5 through page 6).

## IV.     ARGUMENT – Plaintiff has asserted constitutional violations that fully support his claim *Monell* claims against the municipality

Defendants assert that Plaintiff has not asserted any constitutional violations in his Amended Complaint.

This is not correct. Counts I through III of Plaintiff's Amended Complaint allege nothing but violations of Plaintiff's federal constitutional rights.

Counts I and II concern Plaintiff's right to a reasonable expectation of privacy pursuant to the Fourth Amendment to the U.S. Constitution, as established by the U. S. Supreme Court in *Katz v. United States*, 399 U.S. 347 (1967) and subsequent decisions. Count III alleges that Plaintiff's person was seized without probable cause, in violation of the Fourth Amendment. Count III further alleges that Plaintiff was deprived of his liberty without due process of law, in violation U.S. Const. amends. V and XIV.

Plaintiff's *Monell* claims are set out in Count IV. In Count IV, Plaintiff asserts that Defendant Municipality of Bethel Park is liable in Counts I through III for failing to train and supervise Defendant Dixon in state laws regarding the confidentiality of juvenile records; for failing to educate Dixon in U.S. Supreme Court jurisprudence that has established a constitutional right of personal privacy; for failing to instruct Dixon that unlawful disclosure of such records may be a constitutional violation of the right to personal privacy; and for failure to train Dixon in long-established police procedures that will protect a person's constitutional rights to be free of arrest without probable cause, and one's right not to be deprived of one's liberty without due process of law. Plaintiff asserts that because the municipality failed to train Defendant Dixon in the importance of these laws, the obligation her badge imposes to respect these laws, and how to conform her official behavior to the laws and their attendant procedural requirements, the municipality is liable under *Monell* for violation of his civil rights.

Count V of the Amended Complaint alleges that Defendant Dixon committed the tort of false light/invasion of privacy by falsely portraying Plaintiff to the public as a criminal, an act that

3

to this day continues to have negative consequences for Plaintiff' social life, his status in the university community, and his career prospects. Plaintiff makes no *Monell* claim in Count V.

V. **ARGUMENT – Plaintiff's *Monell* claims**

A. **The prevailing rule in the Third Circuit is that a plaintiff must have the opportunity to complete discovery before the court considers a Rule 12(b)(6) motion to dismiss a *Monell* claim.**

Defendants cite *Carter v. City of Philadelphia*, 181 F.3d 339 (3d Cir. 1999) in support of their argument that Plaintiff's *Monell* claims in the Amended Complaint should now be dismissed because they are not supported by facts sufficient facts to satisfy the *Iqbal-Twombly* standard of review for stating a claim for which relief can be granted.

*Carter*, however, stands for precisely the opposite proposition, as the Third Circuit made clear in a unanimous decision that was handed down in 1999 and remains controlling law to this day.

B. *Carter v. City of Philadelphia.*

In *Carter*, the plaintiff asserted in a § 1983 action that a police employee had violated Plaintiff's constitutional rights by suborning perjury from a witness whose false testimony led to his wrongful conviction. The district court upheld the city's Rule 12(b)(6) motion to dismiss *Monell* claims on the basis that they failed to state a claim for relief. Carter appealed.

The question for the Third Circuit in *Carter* was not whether plaintiff had satisfied *Monell* requirements by showing a policy or custom or failure to train that displayed "deliberate indifference" toward whether its officers violated people's civil rights in the course of their duties. As framed by the Court, the sole question in *Carter* was whether the district court should consider a Rule 12(b)(6) challenge to a *Monell* claim at the motion to dismiss stage of the pleadings, or

4

whether that question should be put aside until plaintiff had an opportunity to obtain such facts through the discovery process.

    **C.**    **The *Carter C*ourt's analysis.**

In its analysis, the *Carter* court drew heavily on *Walker v. City of New York*, 974 F.2d 293 (2d Cir. 1992), a § 1983 claim (suborning perjury and failing to produce *Brady* evidence) that the Third Circuit deemed to be "factually similar" to *Carter. Id.* at 357.

The *Carter* court adopted the three-part test set out in *Walker* for evaluating a *Monell* claim: "(1) [M]unicipal policymakers know that employees will confront a particular situation; (2) the situation involves a difficult choice or a history of employees mishandling; and (3) the wrong choice by an employee will frequently cause deprivation of constitutional rights."

The *Carter* court found that:

> In the present case, as in *Walker*, elements (1) and (3) are plainly met: city policymakers know to a moral certainty that police officers will be presented with opportunities to commit perjury or proceed against the innocent. Moreover, *a failure by police officers to resist these opportunities will almost certainly result in deprivations of constitutional rights.*

*Carter* at 357 (emphasis added).

    **D.**    **The *Carter-Walker* test as applied to the instant matter.**

The two (2) elements (1 and 3) cited by the Third Circuit in *Carter* are fully present in this matter.

Policymakers in the Bethel Park Police Department or Bethel Park government know to a certainty that police officers will be presented with opportunities to wrongly disclose confidential juvenile records, thereby violating not only state law but also a juvenile's constitutionally protected right to personal privacy. Likewise, Bethel Park police officers will undoubtedly have the opportunity to arrest people in a manner that violates their Fourth, Fifth and Fourteenth

5

Amendment rights. A failure by a Bethel Park police officer "to resist these opportunities" will, as in *Carter* and *Walker*, "almost certainly result in deprivations of civil rights" - precisely the outcome Plaintiff complains of in the present case. *Carter* at 357.

"As for element two (2)," *Carter* continued, "although it may usually be appropriate to *assume* employees will obey their oaths and the perjury laws, where there is a history of conduct rendering this assumption untenable, city policymakers may display deliberate indifference by doing so." *Id.* at 357, quoting *Walker* at 300 (emphasis added). Stated otherwise, if a police department simply *assumes* that its officers know and follow the law, and yet the contrary is true, the department's failure to train its officers in the basics of civil rights law displays "deliberate indifference"[1] to the constitutional rights of people it serves.

In *Carter* and *Walker*, it may have been appropriate to *assume* the police officers would follow the law and not suborn perjury or withhold *Brady* evidence in order to wrongly convict defendants - even though the contrary turned out to be true.

In the present case, it is appropriate to assume that a veteran officer like Defendant Dixon would respect state laws regarding the confidentiality of juvenile records, especially since she had experience in the area of juvenile law. It would also be reasonable also to assume that she would observe civil rights explicitly guaranteed by the U.S. Constitution and the Supreme Court.

Regrettably, Defendant Dixon's conduct, as set out in the Amended Complaint, renders this assumption untenable. Her conduct may turn out to be the actions of a rogue officer. Or it may be the result of the Bethel Park Police Department's "deliberate indifference" to instructing officers

---

[1] The standard of "deliberate indifference" as a basic for *Monell* liability derives from the U.S. Supreme Court's decision in *City of Canton, Ohio v. Harris*, 489 U.S. 378 (1989).

about laws they must respect while performing their duties, thus triggering *Monell* liability.[2] The only way to answer this question is through discovery.

### E. Discovering facts to support a *Monell* claim.

Police records relevant to an officer's misconduct or the department's training practices are among the least likely records that a defendant police department will gratuitously make available to the public.

How, then, can a plaintiff be expected to establish facts to defeat a Rule 12(b)(6) motion to dismiss without the opportunity to obtain information through court-ordered discovery?

*Walker*, the *Carter* court noted approvingly, held that the plaintiff should be

> allowed to pursue discovery in order to determine whether there was a practice of condoning perjury…, or a pattern of police misconduct sufficient to require the police department to train and supervise police officers to assure they tell the truth.

*Walker* at 300.

The Third Circuit unambiguously agreed with the holding in *Walker*:

> The District Court's insistence that Carter must identify a particular policy and attribute it to a policymaker, *at the pleading stage without benefit of discovery*, is unduly harsh. Carter is not engaged in a fishing expedition… He surmises, reasonably, that such misconduct reflects inadequate training and supervision. He cannot be expected to know, without discovery, exactly what training policies were in place or how they were adopted.

*Carter* at 358 (footnotes omitted) (emphasis added).

### F. The question before this Court.

Plaintiff respectfully reminds the Court that the question raised by Defendant's Supplemental Motion to Dismiss is not the sufficiency of Plaintiff's *Monell* claims, as Defendants

---

[2] As noted earlier, "deliberate indifference" may provide the basis for *Monell* liability. *City of Canton, Ohio v. Harris,* 489 U.S. 378, 388 (1989).

assert, but rather whether the Court should rule on the sufficiency of those claims before or after discovery.

### G. The Third Circuit has spoken.

In *Carter*, the Third Circuit spoke unambiguously on this question, holding that *Monell* claims should be evaluated after discovery. The Court's holding in *McTernan v. City of York*, 564 F.3d 636 (3d Cir. 2009) is consistent with *Carter* in that it permitted extensive discovery to support a *Monell* claim. See also *Phillips v. County of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) ("The Supreme Court's *Twombly* formulation… 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element.") (citations omitted.)

District courts within the Third Circuit have also adhered faithfully to the *Carter* rule. See *Garcia v. Newtown Township*, 2010 WL 785808, at * 8 (E.D. Pa. Mar. 5, 2010) ("Although the details of this alleged policy, custom or practice are less than clearly articulated in the complaint, we shall grant Plaintiff the opportunity to take discovery on this claim. Therefore, Defendants' Motion to Dismiss Plaintiff's *Monell* and § 1983 claims is denied."); *Barclay v. Westmoreland County*, 853 F.Supp.2d 522, 529 (W.D. Pa. 2012) ("Instead [of dismissing under Rule 12(b)(6)], the Court must ask whether the facts alleged raise a reasonable expectation that discovery will reveal evidence of the necessary elements."); *Costantino v. Atlantic City*, 152 F.Supp.3d 311, 323 (D.N.J. 2015) (Extensive discovery permitted in order to establish *Monell* claim that municipality acquiesced in officers' illegal conduct); and *Groark v. Timek*, 989 F.Supp.2d 378 (D.N.J. 2013) (The scope of police records discoverable in support of a *Monell* claim is wide, provided the evidence sought is relevant).

H.     **Plaintiff is not on a fishing expedition.**

As *Carter* noted, a Plaintiff in search of facts to support a *Monell* claim is not on a "fishing expedition." *Carter* at 358.

Among the known facts of this case are that an eleven (11)-year veteran of the Bethel Park Police Department, an officer who rose through the ranks to the position of lieutenant, who in 2018 was appointed as the department's "School Resource Officer/Juvenile Detective," flagrantly and unnecessarily exposed the confidential records of Juvenile VR, in violation of the Pa. Rules of Juvenile Procedure - rules she obviously was familiar with - and in violation of VR's right of personal privacy, a constitutional right that Dixon reasonably could be expected to be aware of. Compounding the disregard for Plaintiff's civil rights, this experienced officer also made no effort to obtain a warrant for Plaintiff's arrest, violating VR's right to be free of unreasonable seizure of his person pursuant to the Fourth Amendment, and his right to due process of law under the Fifth and Fourteenth Amendments - hallmarks of American law that are second nature to any law-abiding police officer in the United States. One can understand why VR, like the plaintiffs *Walker* and *Carter,* "surmises, reasonably, that such misconduct reflects inadequate training and supervision." *Id.*

The circumstances of this case are comparable to a district attorney hiring five (5) new assistant D.A.'s who are fresh out of law school, and without further ado assigning them to dozens of cases without a single moment of instruction on the *Brady* rule. That would be a classic display of "deliberate indifference" and *Monell* liability.[3] Discovery is the only means by which Plaintiff

---

[3] Such was indeed the situation in *Walker*, where the court concluded that complete failure by the DA to train ADAs on fulfilling *Brady* obligations could constitute deliberate indifference sufficient to support *Monell* liability. *Id*. at 300.

can gather the facts necessary for the Court to determine if the Defendant Municipality of Bethel Park and its Police Department provided adequate training and supervision to assure that its employees did not violate the constitutional rights of the people it serves.

### I.  The *Carter* rule is commonsensical.

The underlying logic of the *Carter* rule is apparent. The very records that will determine the sufficiency of a *Monell* claim - personnel files, records of disciplinary actions, departmental manuals, bulletins on training sessions, notes of internal discussions by policymakers regarding department policy or custom - are surely among the most closely held records of decisionmakers in Bethel Park government and its Police Department. These records can be obtained only through discovery.

The Third Circuit rule as stated in *Carter* and subsequent cases is fair, reasonable and consistent with the principle of resolving legal disputes not through strategic manipulation of the rules, but by fair and full disclosure of claims and defenses. Plaintiff asks this Honorable Court to deny Defendants' Supplemental Motion to Dismiss Plaintiff's *Monell* claims on the basis that the Amended Complaint fails to state a claim under the *Iqbal-Twombly* standard of review.

### J.  ARGUMENT: A GUILTY PLEA DOES NOT RENDER AN ILLEGAL ARREST LEGAL

V.R. was arrested and taken in handcuffs from his dormitory room at the University of Pittsburgh late on the afternoon of October 21, 2021. Plaintiff avers that his arrest was unlawful because it was unsupported by probable cause and executed without due process of law.

Defendants argue that notwithstanding the illegality of Plaintiff's arrest, the arrest was automatically rendered lawful when on January 10, 2022 he pleaded guilty to a first-degree misdemeanor count of 18 P.S. § 3126(a)(7) (indecent assault on a person less than 13 years old).

Stated otherwise, Defendants argue that a deprivation of a person's sacred rights under the Fourth and Fifth Amendments to the U.S. Constitution can be sanitized by a guilty plea to the charge.

This wholly untenable theory was first set out in Defendants' March 22, 2023 Reply Brief to Plaintiff's Response in Opposition to Defendants' Motion to Dismiss (ECF Doc. 25 at 2-4). It is repeated verbatim in Defendants' December 5, 2024 Brief in Support of Its Motion to Dismiss the Amended Complaint (ECF Doc. 56 beginning at the last paragraph of page 6 and concluding with the second paragraph of page 8). An abbreviated version now reappears in Defendants' Brief in Support of Defendants' Supplemental Motion to Dismiss Plaintiff's Amended Complaint (ECF Doc. 70 from the last paragraph on page 5 through page 6).

Plaintiff fully addressed this argument in his December 23, 2024 Response to Defendants' Motion to Dismiss Plaintiff's Amended Complaint (ECF 60 at 15-19). That reply is restated below.

**K.     Defendants' categorically assert that where probable cause is at issue in a § 1983 claim, a guilty plea automatically establishes probable cause and defeats the claim. This assertion is not supported by law.**

In their Brief, Defendants bluntly declare that "[p]robable cause is conclusively established to exist at the time of the arrest is made when there is a subsequent guilty plea or conviction." (ECF Doc. 56 at 6.)

This is a novel proposition. Were it legally tenable, it could possibly defeat Plaintiff's claim in Count III that he was arrested without probable cause. It also could lead state law enforcement officers to conclude there is little need to worry about having sufficient probable cause to take a person into custody. By Defendants' reasoning, an officer who arrested a person without probable cause, depriving the person of liberty and subjecting him to judicial process, would be insulated,

11

at the moment a defendant entered a guilty plea, from liability for an arrest that violated the Fourth and Fifth Amendments.[4]

In support of this argument, Defendants invite us to focus on two (2) § 1983 cases: *Domitrovich v. Monaca*, 2010 WL 3489137 (W.D. Pa. September 1, 2010), and *Shilling v. Brush*, Nos. 05-871, 2007 WL 210802 (M.D. Pa. January 22, 2007). Both are far afield of the instant matter.

*Domitrovich* concerned a defendant who pleaded nolo contendere to a reduced charge of resisting a valid arrest. Defendant later tried to set aside the conviction on the basis that the facts she admitted in entering her plea were not true, and that she wished to assert a new set of facts that would support a § 1983 action alleging lack of probable cause for the arrest. The court held that once having admitted, under oath and in a judicial proceeding, facts that were consistent with probable cause for the arrest, the defendant was estopped from asserting new facts to support a lawsuit alleging lack of probable cause. The circumstances in *Domitrovich* clearly have little in common with those in the present matter, and thus the case is not instructive.

At first glance, *Shilling* appears to provide some comfort for Defendants. The court's opinion does indeed contain the words: "Probable cause is established by a guilty plea." *Id*. at 9.

To assess *Shilling'*s applicability to the present case requires understanding the context of the guilty plea. First, as in *Domitrovich*, the plaintiff in *Schilling* had admitted, under oath, facts consistent with probable cause for her arrest. The *Schilling* court's task was to evaluate the sufficiency of probable cause within the context of an arrest made in exigent circumstances where

---

[4] It is well known in the criminal bar that at least 90 percent of cases result in a guilty plea. Given those odds, police departments could instruct their officers to arrest without regard to probable cause and worry about Fourth Amendment claims later, should they arise.

obtaining a warrant was impractical.[5] The court held that the analysis to be applied in exigent or non-exigent circumstances was the same: whether "if *at the moment the arrest was made* ... the facts and circumstances within [the officers'] knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that [the suspect] had committed or was committing an offense.'" *Id*. at 9 (citations omitted) (emphasis added). Given the unusual circumstances in *Schilling*, which are wholly different from those surrounding VR's arrest and adjudication, the court unsurprisingly held that, under the particular circumstances of the case, probable cause could be established by a guilty plea. *Id.*

### L. Probable cause must exist at the time of the arrest. It cannot be summoned into existence months later.

Contrary to Defendants' argument, probable cause cannot be established retroactively by a guilty plea or conviction. Probable cause must exist at the time of the arrest:

> *It is not enough, absent exigent circumstances, that a policeman believe the facts he has are probable cause for a search warrant*. The people of this state and nation are constitutionally entitled to *an independent judicial determination of probable cause before they must open to the policeman's knock at the door*… Moreover, that determination must be made before and not after the search.

*Commonwealth v. Chandler,* 515 Pa. 113, 121 (1984), citing *Johnson v. United States*, 333 U.S.10 (1948) (emphasis added).[6]

### M. The *Heck* bar does not apply to the instant case.

Below is a succinct summary of the *Heck* bar:

> The *Heck* doctrine bars a plaintiff from bringing a suit under [§1983] where success on the claim would undermine a state-imposed conviction or sentence, unless that conviction or sentence has already been invalidated… [T]he *Heck* bar…arose from the Supreme Court's desire to respect state-court convictions and avoid inconsistent judgments…

---

[5] Defendants are not claiming exigent circumstances for Plaintiff's arrest.

[6] For this reason, Defendants' Exhibit "A" ("Affidavit of Joelle Dixon," ECF 55-1), which is dated 1/18/23, well over a year after Plaintiff's arrest, is of no value in this case.

Devi M. Rae, T*he Heck Bar Has Gone Too Far: Heck's Application to Prisoners' Excessive Force Suits*, 17-2 Harv. L. & Pol'y Rev., 83 (2024).

Plaintiff neither contests nor agrees that the *Heck* bar applies to juvenile adjudications, as Defendants maintain. In any event, the entire legal basis for the bar rests on Defendants' assumption that Plaintiff's purpose in bringing this action is to undermine his state-imposed conviction.

As explained in Plaintiff's Response to Defendants' Motion to Dismiss the Amended Complaint (ECF Doc. 60), that element – despite Defendants' repeated attempts to insert it into this case – does not exist in the instant matter. Plaintiff has in no way sought to overturn his conviction.[7]

The web of abstruse legal arguments woven by Defendants in their Supplemental Motion to Dismiss cannot unseat a fundamental principle that underlies all Fourth Amendment jurisprudence: before seizing a person's property or depriving a person of their liberty, the

**N.    Plaintiff is not trying to attack his conviction.**

As Plaintiff forcefully pointed out in his reply to Defendants' Brief in support of its Motion to Dismiss, Defendants' claim that Plaintiff is trying to undermine his conviction is simply not true. Nowhere in any pleading is there a scrap of evidence that his lawsuit is "a veiled attempt" to overturn his conviction. VR knows he did wrong. He is deeply remorseful. He has apologized to the victim, to the victim's family. He has tried to make amends with his own family for embarrassing them. He asked his creator for forgiveness. He is trying to atone for his wrongdoing

---

[7] Defendants previously argued that VR's real purpose in bringing this lawsuit is to overturn his conviction. Plaintiff's fact-based reply (ECF 60 at 15) to this baseless assertion is summarized below.

and put his life back together.  The allegation that he is trying to withdraw his guilty plea is utterly baseless.

Fourth Amendment requires the government to have probable cause for the search or seizure to be lawful.

In the absence of exigent circumstances, probable cause is established by a warrant issued by a neutral magistrate who has evaluated facts, set forth in a written affidavit, that justify the arrest.  Defendant Dixon, perhaps because she had not been trained in how to effectuate a constitutional arrest, did not obtain a warrant, or make any effort to do so.

For all of the foregoing reasons, Plaintiff respectfully submits that Defendants' argument - that a subsequent guilty plea renders an arrest legal - is irrelevant and distracts from the central question posed by Defendants' Supplemental Motion.  That question is whether the Court should follow established Third Circuit law and permit Plaintiff to complete discovery before ruling on the *Monell* claims in the Amended Complaint.

**WHEREFORE,** Plaintiff respectfully requests that this Honorable Court deny Defendants' Supplemental Motion to Dismiss the Amended Complaint.

                                        Respectfully submitted,

BY:    /S/ *W. Cecil Jones*
          W. Cecil Jones, Esquire
          PA ID #36219
          Counsel for Plaintiff
          10127 Valley Forge Drive
          Houston, TX 77042
          (610) 909-5516
          cecil.jones8411@gmail.com
          *Attorney for Plaintiff*

Dated: May 16, 2025

## CERTIFICATE OF SERVICE

    I, W. Cecil Jones, Esquire, hereby certify that on this 16th day of May 2025, I caused a true and correct copy of the foregoing *Plaintiff's Response and Supporting Brief to Defendants' Supplemental Motion to Dismiss Plaintiff's Amended Complaint* upon all counsel of record via the Court's electronic filing system.

                                            Respectfully submitted,

BY:    /S/ *W. Cecil Jones*
           W. Cecil Jones, Esquire
           PA ID #36219
           Counsel for Plaintiff
           10127 Valley Forge Drive
           Houston, TX 77042
           (610) 909-5516
           cecil.jones8411@gmail.com
           *Attorney for Plaintiff*

Dated: May 16, 2025