## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JUVENILE 'VR', *NOW 18 YEARS OF AGE*; | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 22-1499 |
| | ) | |
| MUNICIPALITY OF BETHEL PARK | ) | |
| POLICE DEPARTMENT; DETECTIVE | ) | |
| JOELLE DIXON, *Municipality of Bethel* | ) | |
| *Park Police Department, individually and in* | ) | |
| *her personal capacity*; | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

### MEMORANDUM OPINION

Plaintiff "Juvenile 'VR'" (hereinafter "Plaintiff") filed suit against the Municipality of Bethel Park Police Department ("Bethel Park") and Detective Joelle Dixon ("Detective Dixon") for Bethel Park and Detective Dixon's role in his public arrest at the University of Pittsburgh ("University") on October 21, 2021, and his subsequent detention until October 24, 2021, related to an offense Plaintiff committed as a juvenile before his matriculation at the University. This Court previously held Oral Argument on Defendants' motion to dismiss the claims in Plaintiff's original complaint and, at the end of argument on the motion, the Court granted such motion and dismissed Plaintiff's claims without prejudice. (Docket Nos. 35, 36). Plaintiff thereafter filed his Amended Complaint ("First Amended Complaint" or "FAC"). (Docket No. 43). Pending before the Court are Bethel Park and Detective Dixon's Motion for Sanctions (Docket No. 50), Motion to Dismiss for Failure to State a Claim (Docket No. 55), and Motion to Dismiss (*Supplemental*) (Docket No. 69). Plaintiff opposes the motions (Docket Nos. 54, 59/60, 71), and the parties have now fully briefed their positions. For the reasons explained here, the Court will deny the motion

for sanctions, grant in part and deny in part the motion to dismiss, and grant in part and deny in part the supplemental motion to dismiss.

I.    **Background**[1]

Plaintiff alleges that on Friday, October 21, 2021, he was in his dormitory room at the University when three University police officers knocked on his door, confirmed his identity, and then arrested him without a warrant.  (Docket No. 43, ¶¶ 15-18 ("Even though the officers had no warrant or any other piece of paper giving notice that Plaintiff was subject to arrest, Plaintiff was arrested, handcuffed, escorted by the officers through the dormitory hallway to an elevator, taken to a waiting University … police car, placed in the back seat and … driven to the University … Police Department station")).  Plaintiff alleges that the route taken from his dormitory to the station ("Oakland Station") was busy with many pedestrians, and that some people Plaintiff knew saw and recognized him in the back of the police vehicle.  (*Id.* ¶¶ 18, 22-23).

Once the officers arrived at the Oakland Station with Plaintiff, Plaintiff was turned over to Detective Dixon and a second Bethel Park officer.  (*Id.* ¶ 24).  Detective Dixon shackled Plaintiff to a chair and later took Plaintiff to an adolescent treatment and detention facility ("Cove Prep"), an approximate one-hour drive from the University.  (*Id.* ¶¶ 25-26).  Because Plaintiff arrived at Cove Prep after 4:00 PM on a Friday, he received no hearing until October 24th; therefore, Plaintiff remained at Cove Prep three nights before he had the opportunity to appear before a Juvenile Court Hearing Officer.  (*Id.* ¶¶ 28-29).  The Hearing Officer placed Plaintiff on temporary probation with an ankle monitor, assigned him a probation officer, confined Plaintiff to house arrest other than for classes (which he ordered Plaintiff to resume), and released Plaintiff to his parents.  (*Id.* ¶¶ 30-

---

[1]    The Court here draws upon the factual allegations set forth in the FAC which must be taken as true and viewed in the light most favorable to Plaintiff at this time.  *Warren Gen. Hosp. v. Amgen Inc.*, 643 F.3d 77, 84 (3d Cir. 2011).

31).  For the arrest and three-night detention preceding this hearing, Plaintiff alleges that Detective Dixon had no warrant; rather, it is alleged that the only paper associated with Plaintiff's arrest was an unsigned mailing dated October 21, 2021, that Plaintiff's parents received on or about October 25, 2021, appearing to be from a Juvenile Section administrative law judge, indicating potential charges against Plaintiff and further indicating that an "Intake Officer" would contact them to discuss the matter.  (*Id.* ¶ 102).

After Plaintiff was released to his parents, he sought to resume classes at the University but was afterward temporarily banned from University premises after Detective Dixon contacted University officials to inform them of the charges against Plaintiff.  (*Id.* ¶¶ 33-36).  As a result of that disclosure, the Associate Director of Student Conduct put Plaintiff on interim suspension and informed Plaintiff that he was a *persona non grata* at the University during the suspension.  (*Id.* ¶¶ 36-38).  The Associate Director of Student Conduct sent this same information (about Plaintiff's suspension and status on campus) to six University officials.  (*Id.* ¶ 39).  Because Plaintiff was put on interim suspension, he failed his fall 2021 semester, but he was later permitted to resume his studies in January 2022.  (*Id.* ¶¶ 45-46).  Also in January 2022, Plaintiff was adjudicated delinquent for an indecent assault of a person less than thirteen years of age that had occurred in May 2021.  (Docket No. 55, Ex. A-1).  Because of his adjudication of delinquency, Plaintiff was on probation until April 2023.  (Docket No. 43, ¶¶ 47-48).

Based on these events, Plaintiff alleges that Detective Dixon violated his constitutional rights to privacy, as well as his right to be free of unreasonable seizure and his right to not be deprived of his liberty without due process of law, in violation of the Fourth and Fourteenth Amendments (**Counts I** through **III**).  Plaintiff also alleges that Bethel Park failed to appropriately train and supervise Detective Dixon, which is how it came to be that she violated his federal rights

(**Count IV**).[2]  Plaintiff further alleges that Detective Dixon is liable to him for the tort of false

light invasion of privacy because she arranged for Plaintiff to be arrested on a busy Friday

afternoon at his University in plain view of his peers, thus creating an image of him as an adult

criminal offender who was potentially violent (**Count V**).  Plaintiff is seeking damages for injury

to his reputation and career, emotional and psychological damages, punitive damages, costs and

expenses of this litigation, and any equitable or other relief that the Court would deem appropriate.

(*Id.* at 26-27).  Defendants seek dismissal of all claims, and they further seek sanctions.

## II.    <u>Legal standards</u>

In considering a Rule 12(b)(6) motion to dismiss, the factual allegations contained in a

complaint must be accepted as true and must be construed in the light most favorable to the

plaintiff, and the Court must "determine whether, under any reasonable reading of the complaint,

the plaintiff may be entitled to relief." *Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir.

2008) (quoting *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)); *see Bell

Atlantic Corp. v. Twombly*, 550 U.S. 544, 563 n. 8 (2007).  While Federal Rule of Civil Procedure

8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled

to relief," the complaint must "give the defendant fair notice of what the . . . claim is and the

grounds upon which it rests." *Phillips*, 515 F.3d at 231 (quoting *Twombly*, 550 U.S. at 555).

Moreover, while this standard does not require "detailed factual allegations," Rule 8 "demands

---

[2]      The parties stipulate that Plaintiff intended to assert a *Monell* claim against the Borough of Bethel
Park.  (Docket No. 67).  In Defendants' motion to dismiss and brief (Docket Nos. 55 and 56), Defendants
had argued that Plaintiff's claim in Count IV against the Bethel Park *Police Department* failed as a matter
of law because a police department is a municipal sub-unit not subject to suit.  But the parties clarified
among themselves that Plaintiff meant to assert a *Monell* claim against Bethel Park and, in light of the
clarification, Defendants filed a supplemental motion to dismiss Plaintiff's *Monell* claim.  (Docket Nos. 69
and 70).

more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555).

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). The requirement that a court accept as true all factual allegations does not extend to legal conclusions; thus, a court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* (quoting *Twombly*, 550 U.S. at 555). The Supreme Court has noted that a "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The standard is not so demanding as to "impose a probability requirement at the pleading stage." *Phillips*, 515 F.3d at 234 (quoting *Twombly*, 550 U.S. at 556).

As for sanctions, the Court may impose sanctions pursuant to Rule 11. "Rule 11 'is intended to discourage pleadings that are frivolous, legally unreasonable, or without factual foundation, even though the paper was not filed in subjective bad faith.'" *Shine v. Bayonne Bd. of Educ.*, 633 F. App'x 820, 824 (3d Cir. 2015) (quoting *Lieb v. Topstone Indus. Inc.*, 788 F.2d 151, 157 (3d Cir. 1986)). The standard for sanctions is "stringent because … sanctions 1) are in derogation of the general American policy of encouraging resort to the courts for peaceful resolution of disputes; 2) tend to spawn satellite litigation counter-productive to efficient disposition of cases; and 3) increase tensions among the litigating bar and between the bench and the bar." *Doering v. Union Cnty. Bd. of Chosen Freeholders*, 857 F.2d 191, 194 (3d Cir. 1988) (cleaned up). Accordingly, courts impose sanctions "only in the '*exceptional circumstance*' where a claim or motion is patently unmeritorious or frivolous." *Id.* (quoting *Gaiardo v. Ethyl Corp.*, 835 F.2d 479, 483 (3d Cir. 1987)) (emphasis added).

### III.    Discussion

As the Court summarized *supra*, Section I (Background), Plaintiff alleges that Detective Dixon and Bethel Park violated his constitutional rights by causing his public arrest, disclosing his juvenile records to University officials, and causing his warrantless arrest and three-night detention at Cove Prep prior to a hearing.  Plaintiff further alleges that Detective Dixon is liable to him for the tort of false light.  Defendants argue that Plaintiff's claims should be dismissed because they amount to a collateral challenge of his state court adjudication of delinquency, there is no clearly established constitutional right to privacy of juvenile records, Plaintiff has not alleged facts supporting a failure-to-train or failure-to-supervise *Monell* claim, and any allegations in support of the false-light claim are undermined by the obvious truthfulness of the information disclosed. The Court will evaluate those arguments as they relate to Plaintiff's claims in Counts I through V.

<u>Counts I, II, and IV – Privacy Right Claims</u>

In Counts I and II, Plaintiff seeks to vindicate his constitutional right to privacy under the Fourth and Fourteenth Amendments pursuant to 42 U.S.C. § 1983 and alleges that Detective Dixon violated such right by (1) orchestrating his public arrest, and (2) directly disclosing his juvenile records to University officials.   "A prima facie case under § 1983 requires a plaintiff to demonstrate: (1) a person deprived him of a federal right; and (2) the person who deprived him of that right acted under color of state or territorial law."  *Groman v. Twp. of Manalapan*, 47 F.3d 628, 633 (3d Cir. 1995).  As for that first element of a § 1983 claim, Plaintiff alleges and argues that he had a constitutional right to privacy in his juvenile records, a right reflected in, *e.g.*, the Pennsylvania Juvenile Code's prohibition of disclosure of juvenile records except in specific circumstances that were not present in this case, as well as in the Federal Juvenile Code, 18 U.S.C. §§ 5031-5043 (governing federal juvenile delinquency).

Defendants argue that the privacy-violation claims brought against Detective Dixon in her individual and official capacities in Counts I and II should be dismissed because the right to privacy in one's juvenile arrest records is not a clearly established federal right, therefore Detective Dixon is entitled to qualified immunity in her individual capacity.  Defendants further argue that Plaintiff lacks a sufficient factual basis for pursuing privacy claims against Detective Dixon in her official capacity, *i.e.*, against Bethel Park.  The Court largely agrees with Defendants' arguments for dismissal of the claims in Counts I and II, as well as Count IV to the extent it is premised on the Count I and II allegations.

Qualified immunity protects "government officials performing discretionary functions from liability from civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Harr v. Washington Area Humane Soc'y*, No. CV 21-1560, 2024 WL 4068819, at *6 (W.D. Pa. Sept. 5, 2024) (citations and internal quotation marks omitted).  The Court addresses immunity questions as early as possible in litigation, *id.* (quoting *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)), because qualified immunity is "an entitlement not to stand trial or face the other burdens of litigation."  *Id.* (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)).  When qualified immunity is invoked, courts ask "whether the plaintiff has shown a violation of a constitutional right, and whether the right was 'clearly established' at the time of the alleged constitutional violation."  *Id.* Courts have discretion to ask whether a right is "clearly established" first.  *Wright-Gottshall v. New Jersey*, No. 23-1990, 2024 WL 1826421, at *2 (3d Cir. Apr. 26, 2024) (quoting *Pearson*, 555 U.S. at 232).  Rights can be clearly established by the United States Supreme Court, precedent in the United States Court of Appeals for the relevant region (here, the Third Circuit), or by a "robust

consensus of cases of persuasive authority in the Courts of Appeals." *Id.* (quoting *Fields v. City of Phila.*, 862 F.3d 353, 361 (3d Cir. 2017)).

Regarding the right to privacy in juvenile records, Plaintiff has conceded that "courts within the Third Circuit have yet to establish a categorical right of personal privacy in juvenile records." (Docket No. 60 at 4). Plaintiff adds that, though such right is not thus established in the Third Circuit, "nothing in the Third Circuit case law forbad a court from finding such a right if, taking all proven facts and established legal principles into consideration, the privacy violation was of constitutional magnitude." (*Id.*). With that concession, Plaintiff faces an uphill battle in arguing that a clearly established federal right is at stake here. Nevertheless, to determine whether a right is clearly established, courts start by identifying a "defin[ition of] the right allegedly violated at the appropriate level of specificity." *Sharp v. Johnson*, 669 F.3d 144, 159 (3d Cir. 2012). With a specifically defined right in view, the courts ask whether such a right was "sufficiently clear that a reasonable official would understand that what he was doing violated that right." *Rivera v. Redfern*, 98 F.4th 419, 423 (3d Cir. 2024) (quoting *Saucier v. Katz*, 533 U.S. 194, 202 (2001)). By mandating that question, qualified immunity "ensure[s] that before officers are subjected to suit, they are on notice that their conduct is unlawful." *Thomas v. City of Harrisburg*, 88 F.4th 275, 283 (3d Cir. 2023) (*Saucier*, 533 U.S. at 202, 206).

The right at issue in this case, defined with sufficient specificity, is the right to not have one's juvenile arrest records disclosed either by (1) public arrest, or (2) direct disclosure to individuals other than those to whom disclosure is authorized by state or federal law. In *O'Neill v. Kerrigan*, a district court considered facts and rights like those alleged and asserted here, in a case in which the plaintiff alleged that his arrest on school grounds and his arresting officer's disclosure of charges against him to his school principal violated the Pennsylvania Juvenile Act

and Rules of Juvenile Court Procedure protecting the confidentiality of his juvenile records. 2013 WL 654409, at *3 (E.D. Pa. Feb. 22, 2013). In *O'Neill*, the court considered whether the defendant officers violated the plaintiff's clearly established federal rights under the Fourth, Ninth, and Fourteenth Amendments concerning unreasonable seizures and privacy interests. *Id.* at *6-8. Ultimately, the *O'Neill* court explained that even if disclosure of juvenile records by public arrest might be "constitutionally unreasonable," the court could not say that the right at stake was clearly established such that the defendant officers "should have understood their conduct would violate the Fourth Amendment." *Id.* at *7. The court arrived at the same conclusion regarding disclosure of charges. *Id.* at *10. Overall, the court's conclusion was that, at the time of the plaintiff's arrest (2010), any constitutional right to privacy in juvenile records (as opposed to adult criminal records), was not so clearly established that the defendant officers were on notice that their conduct violated the plaintiff's federal rights. *Id.* at *9.

The Court is unaware of—and Plaintiff has not identified—a Supreme Court decision, Third Circuit precedential decision, nor a robust consensus of cases in the Court of Appeals since *O'Neill* that would have clearly established a federal right to the privacy of juvenile records for purposes of this case and Detective Dixon's alleged violation of Plaintiff's rights in October 2021. Plaintiff attempts to salvage his argument by more broadly arguing that the "right not to have intimate facts concerning one's life disclosed without one's consent" is clearly established. (Docket No. 60 (quoting *Doe v. Luzerne Cnty.*, 660 F.3d 169, 175 (3d Cir. 2011)). And Plaintiff also argues that in the Third Circuit, an individual's reasonable expectation of privacy is stronger the more "personal the information." *O'Neill*, 2013 WL 654409, at *8 (quoting *Malleus v. George*, 641 F.3d 560, 564 (3d Cir. 2011)). For instance, the Third Circuit has determined that individuals have reasonable expectations of privacy in medical prescription records, a minor's pregnancy

status, sexual orientation, an inmate's HIV status, and "minor students' sexual activity, drug and alcohol use, and relationships when requested as part of a community survey." *Id.* (citing *Malleus*, 641 F.3d at 565, and *C.N. v. Ridgewood Bd. of Educ.*, 430 F.3d 159, 180 (3d Cir. 2005)).

The Court finds Plaintiff's argument not compelling. With respect to the specific right at issue here, Plaintiff may have a principled argument for there being a federal right to privacy of juvenile records, *i.e.*, nondisclosure of such records by either public arrest or direct disclosure; nevertheless, such a right was not clearly established at the time of arrest in *O'Neill* and it has not been made so in the time since. Put differently, Detective Dixon could not be said to have been on notice that, at the time of Plaintiff's arrest, she was violating Plaintiff's federal rights by (1) directing Plaintiff's public arrest or (2) disclosing his juvenile records to a University official without any admonition to maintain confidentiality of records or defer any disciplinary consequences arising therefrom. For that reason, Detective Dixon is protected in her individual capacity by qualified immunity and the claims against her in Counts I and II will be dismissed.[3]

Additionally, to the extent Plaintiff seeks to bring a claim against Bethel Park for its failure to properly train and supervise Detective Dixon with respect to a right to privacy in juvenile records (*see* Counts I (official capacity), II (official capacity), and IV), the Court's determination that such right was not clearly established is dispositive as to those claims against Bethel Park. When liability under § 1983 is alleged against a municipality pursuant to the standard set out in *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 694 (1978), and the issue is the

---

[3]    The Court also notes that Plaintiff has not alleged a clear causal link between Detective Dixon and the public nature of Plaintiff's arrest where Plaintiff alleges that the University police arrested him from his dormitory and transported him to the Oakland Station via a particularly busy roadway. Neither the University nor its officers are defendants in this case, and Plaintiff's allegations that they were directed by Detective Dixon as to *how* to arrest Plaintiff are speculative at best. For that reason as well, dismissal of the claim against Detective Dixon in Count I is appropriate.

municipality's alleged "failure to train or supervise municipal employees, liability under section 1983 requires a showing that the failure amounts to 'deliberate indifference' to the rights of persons with whom those employees will come into contact." *Carter v. City of Phila.*, 181 F.3d 339, 357 (3d Cir. 1999).  Courts have held municipalities cannot be said to be "deliberately indifferent to a right that is not clearly established." *Onyiah v. City of Phila.*, 660 F. Supp. 3d 407, 420 (E.D. Pa. 2023) (citing *Szabla v. City of Brooklyn Park*, 486 F.3d 385, 393 (8th Cir. 2007) (en banc) ("[W]e agree with the Second Circuit and several district courts that a municipal policymaker cannot exhibit fault rising to the level of *deliberate* indifference to a constitutional right when that right has not yet been clearly established.")).  On this basis, the Court will dismiss the claims against Bethel Park in Counts I, II, and IV insofar as such claims depend on the underlying allegation that Detective Dixon violated a constitutional right to privacy.  Such dismissal will be with prejudice.

<u>Counts III and IV – Unlawful Seizure Claim</u>

The Court next addresses Plaintiff's claim in Count III that Detective Dixon recklessly disregarded his right to not be arrested without a valid arrest warrant supported by probable cause, his right not to be deprived of liberty without due process, and his right to be free from unreasonable seizure.  (Docket No. 43, ¶ 88).  In support of the claim, Plaintiff points to his allegations that he was arrested from his dormitory room on October 21, 2021, by University officers acting at the behest of Detective Dixon and handed over to Detective Dixon at the Oakland Station, all without a warrant.  From there he was shackled to a chair and then transported to Cove Prep where he remained until October 24, 2021.  Detective Dixon is sued in her individual and official capacity, and Plaintiff further incorporates these allegations about his warrantless arrest and three-night detention in his failure-to-train, failure-to-supervise claim against Bethel Park in

Count IV.  (*Id.* ¶¶ 110-16, 118, 131).  Defendants argue that Plaintiff's claims in Counts III and IV are barred by Plaintiff's admissions in juvenile proceedings.  The Court disagrees.

"Warrantless searches and seizures are presumptively unreasonable and are therefore prohibited under the Fourth Amendment, unless an exception applies." *United States v. Chambers*, No. CR 21-146, 2022 WL 3577913, at *3 (W.D. Pa. Aug. 19, 2022) (quoting *United States v. Mundy*, 621 F.3d 283, 287 (3d Cir. 2010)).  "Although police may make a warrantless arrest in a public place if they have probable cause to believe the suspect is a felon, 'the Fourth Amendment has drawn a firm line at the entrance to the house.  Absent exigent circumstances, that threshold may not reasonably be crossed without a warrant.'" *Sharrar v. Felsing*, 128 F.3d 810, 819 (3d Cir. 1997) (quoting *Payton v. New York*, 445 U.S. 573, 590 (1980)); *Adams v. Springmeyer*, 17 F. Supp. 3d 478, 491 (W.D. Pa. 2014) ("In the absence of consent or exigent circumstances, … police officers need a warrant in order to enter an individual's home for the purpose of making an arrest.").  Courts have explained that college dormitories should be treated no differently than other residences that are considered a "home" for purposes of the Fourth Amendment's protections. *Wagner v. Holtzapple*, 101 F. Supp. 3d 462, 473 (M.D. Pa. 2015).

Defendants argue for dismissal of Plaintiff's unlawful seizure/violation of due process claims not by explaining how Plaintiff's allegations fail to show his arrest and detention were improper, but by arguing that Plaintiff's claim in this regard is barred by Plaintiff's adjudication of delinquency on admission of all necessary facts for a violation of 18 Pa. C.S. § 3126(a)(7) (indecent assault of an individual less than 13 years of age, a misdemeanor offense absent circumstances addressed in (b)(3)(i)-(iv)).  Defendants argue that the result of those delinquency proceedings triggers the *Heck* bar because allowing this claim to proceed would undermine Plaintiff's adjudication of the underlying offense.

Pursuant to the Supreme Court's decision in *Heck v. Humphrey*, "a plaintiff cannot attack the validity of his conviction or sentence in a § 1983 damages action without proving that the conviction or sentence has been 'reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." *Deemer v. Beard*, 557 F. App'x 162, 164–65 (3d Cir. 2014) (quoting *Heck*, 512 U.S. 477, 486–87 (1994)).  At Oral Argument on Defendants' earlier motion to dismiss (Docket No. 16), the Court questioned Defendants on whether *Heck* would apply to the circumstances alleged in this case, and pressed them to justify their argument that it would:

> Isn't the plaintiff contending … that there was no arrest warrant and there was no other lawful basis to arrest the plaintiff in his residence in the absence of a judicial officer swearing out an arrest warrant. You provided an affidavit, but it's not an Affidavit of Probable Cause for an arrest warrant.  There's no court document that has been attached to the record indicating that there has been an arrest warrant.  How do we overcome the arrest warrant issue?

(Transcript of Oral Argument, July 24, 2024).  After pressing Defendants on *Heck*'s applicability in this way, the Court moved on from that question to allow Defendants to address other aspects of their arguments.  However, the Court later returned to the issue in its expression of its inclinations and rulings, explaining that "with respect to the false arrest, false imprisonment, unlawful seizure claim" the Court did not "believe that plaintiff is required to establish a favorable termination of the proceeding under *Heck v. Humphrey* under these circumstances" because "plaintiff's success" on such a claim would not "demonstrate the invalidity of his underlying adjudication of delinquency."  (*Id.*).

Defendants do not explain to the Court in the briefs on the operative motion to dismiss and supplemental motion to dismiss why this Court's earlier inclinations on Defendants' *Heck*

argument were wrong.  Consistent with the Court's remarks at Oral Argument, courts have generally held, based on the Supreme Court's decision in *Wallace v. Kato*, 549 U.S. 384 (2007), that *Heck* "does not automatically bar [a plaintiff's] claims of false arrest and false imprisonment," *Olick v. Pennsylvania*, 739 F. App'x 722, 726 (3d Cir. 2018), in cases where a claim of false arrest or imprisonment is premised upon an alleged "absence of probable cause for [an] initial stop and arrest," rather than the "validity of a conviction or sentence." *Montgomery v. De Simone*, 159 F.3d 120, 126 n. 5 (3d Cir. 1998).  Plaintiff's allegations in this case are that there was no warrant for his arrest and resultant detention from October 21, 2021, to October 24, 2021.  *Heck* is not a bar to a claim based on these allegations, and the Court will allow the claim to proceed against Detective Dixon.

The Court will also allow the claim to proceed as a failure-to-train and/or failure-to-supervise claim against Bethel Park.  Defendants argue that Plaintiff has not alleged any viable constitutional violations by Detective Dixon in her individual capacity, therefore the municipality cannot be held liable for a *Monell* claim.  (Docket No. 69, ¶¶ 6-11).  That argument is premised on the argument this Court has now rejected with respect to the claim in Count III and the impact of Plaintiff's delinquency proceedings on such claim.  The Court has now explained that Plaintiff's challenge to his arrest as warrantless without an applicable exception constitutes a plausible allegation of unlawful seizure.  Therefore, the Court will allow a failure-to-train and/or failure-to-supervise claim to proceed against Bethel Park insofar as it is premised on Detective Dixon's alleged unlawful seizure of Plaintiff.

### Count V – False Light Tort Claim

Next, the Court addresses Plaintiff's claim against Detective Dixon for false light invasion of privacy in Count V.  In support of this claim, Plaintiff alleges that by arranging to have Plaintiff

arrested at a busy time of day on the University campus, inside Plaintiff's dormitory and in plain view of his friends and other classmates, Detective Dixon "recklessly conveyed an impression that would lead a reasonable person to conclude that there was probable cause to arrest Plaintiff, that he had committed a crime as an adult, and that perhaps he was a fugitive from the law for a serious offense." (Docket No. 43, ¶¶ 140-42). Plaintiff alleges that this further "created the false light impression that Plaintiff was not only a criminal, but that he could potentially be violent, thus requiring no fewer than three officers to take him into custody." (*Id.* ¶ 143). Plaintiff further alleges that "Defendants' joint conduct in permitting Plaintiff to be cast in the false light of a criminal was reckless, willful, malicious, and so extreme and outrageous to warrant the imposition of punitive damages." (*Id.* ¶ 154).

Under Pennsylvania law, the tort of false light "imposes liability on a person who publishes material that 'is not true, is highly offensive to a reasonable person, and is publicized with knowledge or in reckless disregard of its falsity.'" *Graboff v. Colleran Firm*, 744 F.3d 128, 136 (3d Cir. 2014) (quoting *Larsen v. Phila. Newspapers, Inc.*, 543 A.2d 1181, 1188 (Pa. Super. Ct. 1988) (en banc)). For falsity of information for false-light liability, it is enough to allege that literally true facts imply a falsehood. *Larsen*, 543 A.2d at 1189. Whether information is highly offensive to a reasonable person is measured by a standard of whether there is "such a major misrepresentation of [the plaintiff's] character, history, activities or beliefs that serious offense may reasonably be expected to be taken by a reasonable man in his position." Restatement (Second) of Torts § 652E cmt. c (1977).

Defendants argue for dismissal of Plaintiff's claim in this regard because they say there is no allegation that they provided *untruthful* information to anyone or acted with a reckless disregard of the falsity of any reports. (Docket No. 56 at 19). They argue that considering the "seriousness

of the charges brought against Plaintiff, and his ultimate admission of guilt, there is no false light in which the plaintiff was placed which would be highly offensive to a reasonable person." (*Id.*).[4] With respect to Detective Dixon, the Court ultimately agrees insofar as Plaintiff has not factually supported a claim that *Detective Dixon* "g[ave] publicity to a matter concerning [Plaintiff] that place[d] [Plaintiff] before the public in a false light." Restatement of Torts (Second) § 652E. Plaintiff alleges that Detective Dixon arranged for Plaintiff's arrest on a late Friday afternoon when campus was busy, but there are no facts alleged that would show Detective Dixon, rather than the arresting University officers, gave publicity to Plaintiff's arrest by the manner in which he was arrested. Therefore, even assuming that Plaintiff has adequately pleaded that facts creating a false impression of him that would be highly offensive to a reasonable person were publicized through his public arrest, he has not alleged facts showing that Detective Dixon—as opposed to University police—would be liable to him for creating such an impression. Detective Dixon's connection to the alleged wrongful conduct was identified by the Court as a deficit in the original complaint at Oral Argument on the earlier motion to dismiss, and yet Plaintiff has failed to allege facts to close that gap. Accordingly, the Court will dismiss Plaintiff's false-light claim with prejudice, it appearing that Plaintiff has no additional facts he could plead to shore up this claim.

Sanctions

The last issue the Court must address is Defendants' request for sanctions. The Court having now determined that Plaintiff's amendments to his complaint cured some, though not all, defects of his original complaint, the Court finds there is no reason to impose the extraordinary

---

[4]    Defendants also argue that false light requires actual malice under the Restatement (Second) of Torts § 652E, which Pennsylvania follows.

measure of sanctions against Plaintiff.  The Court does not detect that Plaintiff's pleadings were frivolous, unreasonable, or otherwise improper; therefore, sanctions are unwarranted.

**IV.    <u>Conclusion</u>**

For these foregoing reasons, Defendants' motion to dismiss will be <u>granted in part</u> and <u>denied in part</u>.  Plaintiff's claims in Counts I, II, and V will be <u>dismissed with prejudice</u>. Defendants' motion to dismiss the claims in Counts III and Count IV insofar as the claim in Count IV is premised on the facts alleged for the claim in Count III will be <u>denied</u>.  The Count IV claim will be otherwise <u>dismissed with prejudice</u>.  Defendants' supplemental motion to dismiss will be <u>granted in part</u> and <u>denied in part</u> consistent with this Court's ruling on Defendants' motion to dismiss.    Defendants'  motion  for  sanctions  will  be  <u>denied</u>.    Orders  consistent  with  this Memorandum Opinion will follow.

<u>*/s/ W. Scott Hardy*</u>
W. Scott Hardy
United States District Judge

cc/ecf:  All Counsel of Record